# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 48601-6-II |
| Respondent, | |
| v. | |
| STEVE VERMILLION, CITY OF PUYALLUP, | PUBLISHED OPINION |
| Appellants. | |

LEE, J. — Arthur West submitted a public records request under the Public Records Act[1] (PRA) to the city of Puyallup (City) for the "communications received or posted" through a personal website and associated e-mail account run by city council member Steve Vermillion. Clerk's Papers (CP) at 41. Vermillion refused to provide records that were in his home, on his personal computer, or in the e-mail account associated with his website, citing privacy provisions of the Washington and United States Constitutions. The City supported Vermillion's position. West sued. The superior court granted West's motion for summary judgment requiring Vermillion to search for and produce the requested records. Vermillion and the City appeal, arguing that the superior court erred because article I, section 7 of the Washington Constitution and the First and Fourth Amendments to the United States Constitution protect the requested documents.

---

[1] Ch. 42.56 RCW.

We hold that it was proper for the superior court to require Vermillion to produce to the City e-mails in his personal e-mail account that met the definition of a public record under RCW 42.56.010(3) and to submit an affidavit in good faith attesting to the adequacy of his search for the requested records. We further hold that the First and Fourth Amendments to the United States Constitution and article I, section 7 of the Washington Constitution do not afford an individual privacy interest in public records contained in Vermillion's personal e-mail account. Therefore, we affirm, but we remand for the superior court to amend its order in light of *Nissen v. Pierce County*, 183 Wn.2d 863, 357 P.3d 45 (2015).

FACTS

In 2009, Vermillion created a website and an e-mail account associated with the website to aid in his state congressional campaign. Vermillion continued to use the website and e-mail after the campaign ended for various civic groups with which he was involved.

In 2011, Vermillion began using the website and e-mail to campaign for a position on the Puyallup City Council. Vermillion was elected to the Puyallup City Council effective January 1, 2012. After being elected, Vermillion occasionally received e-mails from constituents, as well as people from the City, through his website and personal e-mail account. Vermillion also used his website and e-mail to coordinate with other city council candidates.

When Vermillion received an e-mail that required an official response or action, he would forward the e-mail to the appropriate person at the City and then delete it from his e-mail. Vermillion said he used his City e-mail account when conducting City business, and he considered his website and the associated e-mail account to be "personal papers." CP at 70.

West submitted a public records request to the City for the communications received or posted through city council member Steve Vermillion's website that "concern[ed] the City of Puyallup, City business, or any matters related to City governance the City Council and mayor, or his membership on the City Council." CP at 40. Vermillion refused to provide records that were at his home, on his personal computer, or in his non-City e-mail account. The City informed West that the records he sought were not within the City's possession or control. West filed a public records request action against the City and Vermillion.

West, the City, and Vermillion filed cross-motions for summary judgment. The superior court denied the City's motion, but granted West's motion in part, ruling that (1) the Fourth Amendment's protections against search and seizure were not implicated because Vermillion had no reasonable expectation of privacy in communications "related to the public's business"; (2) the privacy protections under article I, section 7 did not apply because West was not seeking private information; (3) the First Amendment was not implicated because West was not asking for political activity records; (4) Vermillion was not subject to the City's policy prohibiting City employees and volunteers from performing city business on personal or third-party "technology resource[s]," which include electronic or digital communications and commingling of City and non-City data files; and (5) the public has a right to inspect public records located on a personal computer unless the records are "highly offensive to a reasonable person and are not of legitimate public concern." CP at 183-85. The superior court then ordered Vermillion "under penalty of perjury [to] produce records that are within the scope of [p]laintiff's records request." CP at 185. The superior court also granted a CR 54(b) certification.

3

Vermillion and the City appealed directly to the Washington Supreme Court. The Supreme Court transferred the appeal to this court for review.

ANALYSIS

Our Supreme Court's decision in *Nissen*, 183 Wn.2d 863, controls. Accordingly, we conclude that the arguments raised by Vermillion and the City fail, but we remand for the superior court to amend its order to conform to the language and procedure set forth in *Nissen*.

A.    STANDARD OF REVIEW

We review PRA requests and summary judgment orders de novo. RCW 42.56.550(3); *Nissen*, 183 Wn.2d at 872; *West v. Thurston County*, 169 Wn. App. 862, 865, 282 P.3d 1150 (2012). We also review "the application of a claimed statutory exemption without regard to any exercise of discretion by the agency." *Newman v. King County*, 133 Wn.2d 565, 571, 947 P.2d 712 (1997).

The PRA "'is a strongly worded mandate for broad disclosure of public records.'" *Progressive Animal Welfare Soc. v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (plurality opinion) (quoting *Hearst Corp. v . Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1994)). We are required to construe the PRA's disclosure provisions liberally and its exemptions narrowly. *Progressive Animal Welfare*, 125 Wn.2d at 251 (plurality opinion).

"The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.56.550(1). Unless the requested record falls within a specific exemption of the PRA, or other statute that exempts or prohibits disclosure

of specific information or records, the agency must produce the record. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 730, 174 P.3d 60 (2007); RCW 42.56.070(1).

B.      *NISSEN V. PIERCE COUNTY*

Subsequent to West's request, the superior court's decision, and the parties' submission of appellate briefs, our Supreme Court decided *Nissen*, 183 Wn.2d 863. The parties then filed supplemental briefing addressing *Nissen*. The *Nissen* opinion is dispositive of the issues raised on appeal in this case.

In *Nissen*, the court considered whether an elected county prosecutor's text messages on work-related matters sent and received from a private cell phone may be public records. 183 Wn.2d at 873. The records request asked for production of "any and all of [elected county prosecutor's] cellular telephone records for [private telephone number] or any other cellular telephone he uses to conduct his business including text messages from August 2, 2011," and for "[elected county prosecutor's] cellular telephone records for [private telephone number] for June 7, 2010." *Nissen*, 183 Wn.2d at 869-70 (footnotes omitted). *Nissen* first considered whether records of government business conducted on a private phone were "public record[s]" as defined in the PRA; then whether the specific records requested were "public record[s]"; and finally, how "public records" in the exclusive control of public employees could be sought and obtained. 183 Wn.2d at 873.

First, *Nissen* held that "records an agency employee prepares, owns, uses, or retains on a private cell phone within the scope of employment can be a public record if they also meet the

other requirements of RCW 42.56.010(3)."[2]  183 Wn.2d at 877.  In reaching this conclusion, the court noted that a public record is "'prepared, owned, used, or retained by [a] state or local agency'" but that state and local agencies "lack an innate ability to prepare, own, use, or retain any record" independently, and "instead act exclusively through their employees and other agents." *Nissen*, 183 Wn.2d at 876 (alteration in original) (quoting RCW 42.56.010(3)).  Thus, when the

---

[2] RCW 42.56.010 states:

> The definitions in this section apply throughout this chapter unless the context clearly requires otherwise.
>
>     (1) "Agency" includes all state agencies and all local agencies.  "State agency" includes every state office, department, division, bureau, board, commission, or other state agency.  "Local agency" includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.
>
>     (2) "Person in interest" means the person who is the subject of a record or any representative designated by that person, except that if that person is under a legal disability, "person in interest" means and includes the parent or duly appointed legal representative.
>
>     (3) "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.  For the office of the secretary of the senate and the office of the chief clerk of the house of representatives, public records means legislative records as defined in RCW 40.14.100 and also means the following: All budget and financial records; personnel leave, travel, and payroll records; records of legislative sessions; reports submitted to the legislature; and any other record designated a public record by any official action of the senate or the house of representatives.
>
>     (4) "Writing" means handwriting, typewriting, printing, photostating, photographing, and every other means of recording any form of communication or representation including, but not limited to, letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, motion picture, film and video recordings, magnetic or punched cards, discs, drums, diskettes, sound recordings, and other documents including existing data compilations from which information may be obtained or translated.

employee or other agent "acts within the scope of his or her employment, the employee's actions are tantamount to 'the actions of the [body] itself.'" *Nissen*, 183 Wn.2d at 876 (alteration in original) (quoting *Houser v. City of Redmond*, 91 Wn.2d 36, 40, 586 P.2d 482 (1978)). "An employee's communication is 'within the scope of employment' only when the job requires it, the employer directs it, or it furthers the employer's interests." *Nissen*, 183 Wn.2d at 878 (quoting *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573, 320 P.2d 11 (1958)).

Second, the *Nissen* court considered whether the specific records requested were public records. The court noted that the text messages were a writing, and considered whether the requested records "'relat[e] to the conduct of government or the performance of any governmental or proprietary function'" and were "'prepared, owned, used, or retained' by an agency." *Nissen*, 183 Wn.2d at 880-81 (alteration in original) (quoting RCW 42.56.010(3)). The court held that the content of the text messages requested were potentially public records subject to disclosure because the requester sufficiently alleged that the elected prosecutor put "'work related'" outgoing text messages "'into written form'" and "'used'" incoming text messages "while within the scope of employment," thereby satisfying the three elements of a public record in RCW 42.56.010(3). *Nissen*, 183 Wn.2d at 882-83.

Third, the court considered "the mechanics of searching for and obtaining public records stored by or in the control of an employee." *Nissen*, 183 Wn.2d at 883. The court rejected the county's and prosecutor's arguments that various constitutional provisions, including the Fourth Amendment and article I, section 7, protected the records on a private phone from disclosure. *Nissen*, 183 Wn.2d at 883. The court reasoned that "an individual has no constitutional privacy interest in a *public* record." *Nissen*, 183 Wn.2d at 883. Instead, the court held that the agency

7

employees and agents are required to search their own "files, devices, and accounts for records responsive to a relevant PRA request," and must then "produce any public records (e-mails, text messages, and any other type of data)" to the agency for the agency to then review for disclosure. *Nissen*, 183 Wn.2d at 886. The employee or agent may submit "'reasonably detailed, nonconclusory affidavits' attesting to the nature and extent of their search," to show the agency conducted an adequate search. *Nissen*, 183 Wn.2d at 885 (quoting *Neighborhood All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 721, 261 P.3d 119 (2011)). But the court held:

> Where an employee withholds personal records from the employer, he or she must submit an affidavit with facts sufficient to show the information is not a "public record" under the PRA. So long as the affidavits give the requester and the trial court a sufficient factual basis to determine that withheld material is indeed nonresponsive, the agency has performed an adequate search under the PRA.

*Nissen*, 183 Wn.2d at 886.

C.    PUBLIC RECORDS ON PERSONAL ACCOUNTS

1.    Personal E-mail Accounts are Subject to the PRA

Appellants argue that the superior court erred in ordering Vermillion "to produce e[-]mails from his personal e[-]mail account and swear under [penalty of] perjury that he had complied." Br. of Appellant (Vermillion) at 3. Specifically, Vermillion argues that the PRA does not "authorize an agency to require an elected official to search a personal e[-]mail account." Br. of Appellant (Vermillion) at 4. We reject Vermillion's argument.

*Nissen* squarely addressed this argument and held that an agency's employees or agents must search their own "files, devices, and accounts," and produce any public records, including "e-mails," to the employer agency that are responsive to the PRA request. 183 Wn.2d at 886. The *Nissen* court also held that affidavits by the agency employees, submitted in good faith, are

sufficient to satisfy the agency's burden to show it conducted an adequate search for records. 183 Wn.2d at 885. Thus, we hold that it was proper for the superior court to require Vermillion to produce[3] to the City e-mails in his personal e-mail account that meet the definition of a public record under RCW 42.56.010(3) and to submit an affidavit in good faith attesting to the adequacy of his search for the requested records.

    2.      No Individual Constitutional Privacy Interests in Public Records

Appellants argue that the superior court "erred in ruling that a search would not violate Vermillion's privacy rights," and that the PRA does not provide sufficient guidance to distinguish between what e-mails should be produced to the city and what should be protected by Vermillion's constitutional privacy rights. Br. of Appellant (Vermillion) at 3. In support, Vermillion relies on article I, section 7 and the Fourth Amendment to argue that the entirety of his personal e-mail account is protected from a compelled search. Vermillion also relies on the First Amendment to argue that the content of his e-mails is protected by his right to associate privately. We disagree.

    a. Fourth Amendment and Article I, Section 7

In *Nissen*, the court held that "an individual has no constitutional privacy interest in a *public* record." 183 Wn.2d at 883. Like the appellants, the elected prosecutor and Pierce County in *Nissen* "primarily cite[d] to the Fourth Amendment to the United States Constitution and article I,

---

[3] We are mindful of the distinction between the terms "produce" and "disclose," along with the variations of each word, as discussed in *White v. City of Lakewood*, 194 Wn. App. 778, 374 P.3d 286 (2016). Here, "produce" is used because "produce" is the term that the Supreme Court uses in *Nissen* and the term "produce" only contemplates production to the city, which then reviews the entire set of responsive records before deciding what will be disclosed to the requester. 183 Wn.2d at 873 (ordering the prosecutor "to obtain, segregate, and produce those public records to the County").

section 7 of the Washington Constitution" in asserting constitutional rights to privacy in the place potentially containing public records. 183 Wn.2d at 883 n.9. Vermillion's argument differs only in that the place potentially containing public records is his personal e-mail account rather than a personal cell phone. Vermillion does not argue that this factual distinction changes the constitutional analysis, and we hold that it does not. Because our Supreme Court considered and rejected the argument that the Fourth Amendment and article I, section 7 afford an individual privacy interest in public records held on a personal cell phone, we also reject the argument that the Fourth Amendment and article I, section 7 afford an individual privacy interest in public records contained in a personal e-mail account.

b. First Amendment Right To Associate

Vermillion and the City submitted supplemental briefs addressing what they believed the effect *Nissen* has on the case here. Appellants argue that the *Nissen* court did not address the "privacy of associational communications" afforded by the First Amendment. Suppl. Br. of Appellants at 9. We hold that (1) the language of the *Nissen* holding is not limited to the constitutional principles explicitly expressed by the *Nissen* court, (2) the *Nissen* opinion shows the court was mindful of the First Amendment's associational privacy rights, and (3) even if individual constitutional protections could prevent disclosure of public records, the absence of specificity as to the particular records claimed to be protected here would render any opinion as to those records similarly vague and wholly advisory.

As stated above, "an individual has no constitutional privacy interest in a *public* record." *Nissen*, 183 Wn.2d at 883. The language of this holding does not limit it to only certain constitutional privacy interests nor to only those privacy interests enumerated under certain

constitutional provisions. Instead, *Nissen* was clear that an individual does not have a constitutional privacy interest in public records. *Nissen*'s holding was mindful of the associational privacy rights the First Amendment affords elected officials, as evidenced by the court's citation to *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 426, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977) (considering First Amendment associational privacy rights of President Nixon as they related to the Presidential Recordings and Materials Preservation Act of 1974 (Act)[4]) immediately following its holding. 183 Wn.2d at 883 n.10. We, therefore, reject appellants' argument that the First Amendment's right to association protects public records in Vermillion's personal e-mail account from disclosure because associational privacy rights under the First Amendment are constitutional privacy rights, and "an individual has no constitutional privacy interest in a *public* record." *Nissen*, 183 Wn.2d at 883.

*Nissen* also concluded that "it [wa]s impossible at th[at] stage to determine if any of the messages are in fact public records," and directed the elected prosecutor to "obtain a transcript of the content of all the text messages at issue, review them, and produce to the County any that are public records consistent with [the *Nissen*] opinion." 183 Wn.2d at 888. This would then allow the County to conduct its review just as it would any other public records request. *Nissen*, 183 Wn.2d at 888.

Similarly here, the record before us does not contain information upon which we can determine whether e-mails contained in Vermillion's personal e-mail account could be subject to First Amendment protections, let alone if they are public records. The closest thing to the actual

---

[4] Specifically, Title I of Pub. L. No. 93-526, 88 Stat. 1695, note following 44 U.S.C. § 2107 (Supp. V 1970).

e-mails in dispute that is in our record is a "fictitious e[-]mail . . . based on an actual e[-]mail at issue in a case that involves this exact issue currently being litigated in Skamania Superior Court." Reply Br. of Appellant (Vermillion) at 19 n.40; *see also* Suppl. Br. of Appellants at 17 n.35 (reproducing the same "fictitious e-mail"). A fictitious e-mail that is similar in an unexplained way to an e-mail in an unrelated case cannot be the basis for us to issue an opinion as to the character of a real e-mail in this case. Were we to issue such an opinion, it would be, at best, advisory. *See Walker v. Munro*, 124 Wn.2d 402, 418, 879 P.2d 920, (1994) ("We choose instead to adhere to the longstanding rule that this court is not authorized under the declaratory judgments act to render advisory opinions or pronouncements upon abstract or speculative questions."). Therefore, we hold that even if individual constitutional protections under the First Amendment could allow Vermillion to not disclose public records in his personal e-mail account, it is impossible for us to determine if any of the e-mails are subject to First Amendment protections or are even public records.

3.      Amicus Briefing

The Washington Coalition for Open Government (WCOG) filed an amicus curiae brief. Appellants responded jointly to the Amicus brief.

a. Elected Officials—Legislative vs. Executive

WCOG argues that the PRA applies to elected officials. As explained above, the *Nissen* court held that the PRA applied to elected officials when it ruled that Pierce County's elected prosecutor was subject to the PRA. 183 Wn.2d at 879.

In reply, appellants argue, for the first time, that the result must be different as applied to them because Vermillion was an elected *legislative* official, rather than an elected *executive*

official.  Appellants contend that this distinction is important because "unlike an elected executive official such as a county prosecutor, an elected legislative official has no legal authority to act on behalf of the city through e[-]mail, or to take any unilateral action on behalf of the City at all."  Joint Response to Amicus Br. at 2.  We disagree.

A record subject to disclosure under the PRA is not contingent on its possessor's ability to take unilateral action on behalf of the agency.  Instead, a record is subject to disclosure under the PRA if it is "a record that an agency employee prepares, owns, uses, or retains in the scope of employment."  *Nissen*, 183 Wn.2d 876.  And the record is "'within the scope of employment' only when the job requires it, the employer directs it, or it furthers the employer's interests."  *Nissen*, 183 Wn.2d at 878 (quoting *Greene*, at 573).  Thus, whether a record is subject to disclosure hinges on if the record was prepared, owned, used, or retained "within the scope of employment," not if the record was prepared, owned, used, or retained within the scope of employment by the executive branch of the government.  *Nissen*, 183 Wn.2d at 879.  Appellants' attempt to distinguish *Nissen* on the basis that Vermillion was an elected legislative official rather than an elected executive official fails.

### b.  First Amendment

WCOG argues that the First Amendment does not bar the e-mails that are public records from disclosure.  WCOG relies on the holding in *Nissen* that "an individual has no constitutional privacy interest in a *public* record."  183 Wn.2d at 883.

Instead of addressing *Nissen*, appellants rely entirely on *Nixon* to support the proposition that "Vermillion's correspondence with constituents qualifies as political association, which would be 'seriously infringed' if subjected to disclosure under the PRA."  Joint Response to Amicus Br.

at 4 (citing *Nixon*, 433 U.S. at 467). Appellants seize on the *Nixon* Court's recognition "that involvement in partisan politics is closely protected by the First Amendment." 433 U.S. at 467. The *Nixon* Court was considering whether a subpart of the Act that provided the "scheme for custody and archival screening of the materials" disclosed under the Act "'necessarily inhibits [the] freedom of political activity [of future Presidents] and thereby reduces the quantity and diversity of the political speech and association that the Nation will be receiving from its leaders.'" 433 U.S. at 468 (alterations in original) (quoting "Brief of Appellant 168"). The *Nixon* Court held that the Act did not inhibit the freedom of political activity and did not reduce the quantity and diversity of political speech and association. 433 U.S. at 468.

Appellants' reliance on *Nixon* rather than *Nissen* is not persuasive. Appellants do not argue that *Nixon* and *Nissen* are in conflict with one another. Nor do appellants analyze the significant factual dissimilarities between *Nixon* and the case at bar. *Nissen* interpreted the same statute at issue here, under similar facts, and citing to *Nixon*, held that under Washington's PRA, "an individual has no constitutional privacy interest in a *public* record." 183 Wn.2d at 883. We follow *Nissen* and hold Vermillion has no constitutional privacy interest in public records that are contained in his personal e-mail account.

CONCLUSION

Under *Nissen*, appellants' arguments fail. However, because the superior court issued its order before our Supreme Court decided *Nissen*, we remand this case for the superior court to amend its order to conform to the language and procedure set forth in *Nissen*. This will include requiring Vermillion to conduct "'an adequate search'" of the undisclosed e-mails. *Nissen*, 183 Wn.2d at 885 (quoting *Neigh. All.*, 172 Wn.2d at 721). In doing so Vermillion must "in good faith

14

. . . submit 'reasonably detailed, nonconclusory affidavits' attesting to the nature and extent of [his] search." *Nissen*, 183 Wn.2d at 885 (quoting *Neigh. All.*, 172 Wn.2d at 721). Those affidavits must be submitted "with facts sufficient to show the information [he decides not to disclose] is not a 'public record' under the PRA." *Nissen*, 183 Wn.2d at 886.[5]

We affirm, but we remand for the superior court to amend its order in light of *Nissen v. Pierce County*, 183 Wn.2d 863, 357 P.3d 45 (2015).

_____
Lee, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.

---

[5] *Nissen* recognized that this "adequate" and "good faith" procedure was subject to abuse. 183 Wn.2d at 886. The court made two points regarding this potential for abuse that are applicable here. First, the superior court has the authority to "resolve disputes about the nature of a record 'based solely on affidavits' RCW 42.56.550(3), without an in camera review, without searching for records itself, and without infringing on an individual's constitutional privacy interest in private information he or she keeps at work." *Nissen*, 183 Wn.2d at 885. And, second, where an "employee asserts a potential responsive record is personal, he or she must provide the employer and 'the courts with the opportunity to evaluate the facts and reach their own conclusions,' about whether the record is subject to" disclosure. *Nissen*, 183 Wn.2d at 886 (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 480-81 (2d Cir. 1999) (adopting procedure used by federal courts for the Freedom of Information Act)). Thus, the possibility for in camera review is not foreclosed, but is not immediately required.