# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

|  |  |
|---|---|
| STATE OF WASHINGTON, | No.  50235-6-II |
| Respondent, |  |
| v. | PUBLISHED OPINION |
| BRELVIS CONSULTING LLC, |  |
| Appellant. |  |

BJORGEN, J. — Brelvis Consulting LLC (Brelvis) appeals from the superior court's order requiring it to comply with the civil investigative demand (CID) issued and served on Brelvis by the Attorney General's Office (AGO) pursuant to RCW 19.86.110.  Brelvis argues that the superior court erred by compelling it to comply with the CID because it violates Brelvis' (1) right against self-incrimination, (2) right against intrusion into its private affairs, and (3) right against unreasonable search and seizure.  Brelvis also argues that the CID is directed at the managing member of Brelvis, Bruce Mesnekoff, in his personal capacity.

We hold that the superior court properly required Brelvis to comply with the CID and consequently affirm its decision.

FACTS

On August 3, 2016, the AGO received a complaint regarding an entity known as the Student Loan Help Center LLC. Although the complaint identified the "National Student Loan Help Center" as its subject, it included an Internet address for the "Student Loan Help Center." Clerk's Papers (CP) at 159-60. The complaint also included a link to the Better Business Bureau's (BBB) Internet complaint page regarding the Student Loan Help Center. The BBB webpage for the Student Loan Help Center included the following information:

Pattern of Complaints

BBB files indicate that The Student Loan Help Center has a pattern of complaints stating that the business does not consolidate loans after the consumer pays an initial fee. Complaints further show that consumers['] request for refunds go unanswered by the business.

In September 2014, July 2015, and December 2016, BBB sent a request to The Student Loan Help Center to address this pattern and what actions the business has taken to help eliminate the causes of complaints. As of today's date, BBB has not received a response from the business.

CP at 164.

The Student Loan Help Center also does business under the name Brelvis Consulting LLC. Mesnekoff owns and operates Brelvis and is its registered agent. On October 21, the AGO sent a CID to Brelvis pursuant to RCW 19.86.110 as part of its investigation into whether Brelvis had engaged in unfair or deceptive business practices in violation of RCW 19.86.020.[1] The CID was addressed to Brelvis, in care of Mesnekoff. The AGO's investigation related to possible misrepresentations about student loan forgiveness and other possible violations of Washington's Debt Adjusting Act, chapter 18.28 RCW, and Consumer Protection Act, chapter 19.86 RCW,

---

[1] RCW 19.86.020 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

based on the August 3 complaint. The CID included 12 interrogatories and 13 requests for production. The CID requested several categories of documents and responses from Brelvis regarding matters such as advertisements, payment records, customer complaints, client intake and communication records, and other information about Brelvis' business, its employees, and any litigation against the company.

On November 22, counsel for Brelvis contacted the AGO requesting additional time to respond to the CID. On December 29, after multiple e-mail communications, the AGO informed Brelvis that if it did not respond to the CID by January 5, 2017, the AGO would file a motion to enforce the CID. Brelvis retained new counsel who, on January 12, e-mailed the AGO requesting additional time to respond to the CID. Then, on January 27, counsel informed the AGO that Brelvis was again seeking new counsel with regard to the CID. On January 30, the new counsel for Brelvis contacted the AGO to confirm that it had taken over representation for Brelvis. On February 3, the AGO told Brelvis that it would give it until February 10 to respond to the CID. Brelvis did not respond to the interrogatories and requests for production.

On February 14, the AGO filed a petition to enforce the CID, which the superior court granted. Brelvis filed a motion for reconsideration of the order enforcing the CID, which the superior court denied. Brelvis appealed both the superior court's order enforcing the CID and its order denying reconsideration to our court. On April 21, Brelvis filed a motion to stay the superior court's March 24 order, which the superior court granted.

ANALYSIS

Brelvis argues that the superior court's order compelling compliance with the CID is erroneous because it violates Brelvis' (1) right against self-incrimination, (2) right against unlawful intrusion into its private affairs, and (3) right against unreasonable search and seizure. We disagree.

## I. SCOPE OF CID

As an initial matter, Brelvis argues that Mesnekoff's individual rights against self-incrimination, unlawful intrusion into his private affairs, and unreasonable search and seizure are implicated. We disagree.

The CID noted that it was directed to "Brelvis Consulting LLC" and to Mesnekoff as its registered agent for service. CP at 18. The interrogatories and requests for production defined "You," "Your," and "Brelvis" as referring to Brelvis Consulting LLC, including any principals, owners, employees, officers, agents, and "any other persons or entities acting on behalf of or under the direction, authorization or control of Brelvis." CP at 18, 20. Brelvis argues that because the definition of "You," "Your," and "Brelvis" encompasses Mesnekoff, "the CID applies to him personally." Reply Br. of Appellant at 10-11. Brelvis asserts that

> [t]he plain language of the CID equates Mr. Mesnekoff individually and personally with the word "Brelvis." Mr. Mesnekoff is therefore required by the terms of this CID to answer the interrogatories under oath.

Reply Br. of Appellant at 11. Brelvis also argues that Mesnekoff is personally implicated because the CID was addressed to Brelvis in care of him.

A corporation is "artificial, invisible, intangible," and it exists only in law. *Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 76-77, 265 P.3d 956 (2011); *Broyles v. Thurston County*, 147 Wn. App. 409, 428, 195 P.3d 985 (2008). Our case law recognizes that

> [t]he invisible, intangible object of our legal contemplation cannot answer discovery or be effectively sanctioned if it does not. By necessity it acts through its officers, directors, employees, and other agents. As with a corporation's duties in every other sphere in which it operates, it is the corporate officers, directors, and other agents who must discharge its duties in a lawsuit.

*Diaz*, 165 Wn. App. at 76-77 (internal citation omitted). Further, a "'corporation exists as an organization distinct from . . . its shareholders.'" *State v. Chase*, 1 Wn. App. 2d 799, 805, 407 P.3d 1178 (2017), *review denied*, 190 Wn.2d 1024 (2018) (quoting *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 552, 599 P.2d 1271 (1979)). Accordingly, corporations acting through corporate officers and corporate officers acting in their personal capacity "maintain distinct legal obligations and interests." *Id*. A corporation's separate legal identity is not lost because it is owned by one person or members of a single family. *Id*.

Brelvis' claim that the CID targets Mesnekoff in his personal capacity is belied by case law and the record. The United States Supreme Court has held that

> without regard to whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian, . . . a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds.

*Braswell v. United States*, 487 U.S. 99, 108-09, 108 S. Ct. 2284, 101 L. Ed. 2d 98 (1988) (internal citations omitted).[2] Nevertheless, the "privilege against self-incrimination includes the right of a witness not to give incriminatory answers in any proceeding—civil or criminal,

---

[2] We note that *Braswell* also stated,

> We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.

*Braswell*, 487 U.S. at 118, n.11. However, it was not briefed and argued whether this open question should be resolved by deviating from *Braswell*'s holding for LLCs with a single member.

administrative or judicial, investigatory or adjudicatory." *Eastham v. Arndt*, 28 Wn. App. 524, 527, 624 P.2d 1159 (1981) (citing *Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972)).

Thus, Mesnekoff, in his capacity as Brelvis' custodian, may not resist a request for production of Brelvis' records on Fifth Amendment grounds. *See Braswell*, 487 U.S. at 108-09. However, where the interrogatories propounded by the AGO might tend to incriminate Mesnekoff in future criminal proceedings, the Fifth Amendment privilege against self-incrimination permits Mesnekoff to refuse to answer official questions asked in the context of the CID. *See King v. Olympic Pipeline Co.*, 104 Wn. App. 338, 351, 16 P.3d 45 (2000), which held that the "Fifth Amendment privilege permits a person to refuse to testify at a criminal trial, or to refuse to answer official questions asked in any other proceeding, where the answer might tend to incriminate him or her in future criminal proceedings."

For these reasons, we limit our review to Brelvis' assignments of error as they apply to Brelvis, and we also address whether Mesnekoff properly invoked his Fifth Amendment privilege against self-incrimination.

## II. GENERAL LEGAL STANDARDS

We review constitutional issues de novo. *City of Seattle v. Evans*, 184 Wn.2d 856, 861, 366 P.3d 906 (2015), *cert. denied*, 137 S. Ct. 474 (2016). We also review issues of statutory interpretation de novo. *Jongeward v. BNSF R. Co.*, 174 Wn.2d 586, 592, 278 P.3d 157 (2012). Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Id.* If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. *Id.* at 594. We discern plain meaning not only from the provision in question, but also from closely related statutes. *Id.* "[W]e will not

read additional language into a statute that the legislature did not write." *Killian v. Seattle Pub. Sch.*, 189 Wn.2d 447, 459, 403 P.3d 58 (2017). We do not interpret a statute such that it renders any portion meaningless or superfluous. *Jongeward*, 174 Wn.2d at 601.

### III. PRIVILEGE AGAINST SELF-INCRIMINATION

A.      Legal Standards

The Fifth Amendment to the United States Constitution states, in part, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST., amend. V. Similarly, article I, section 9 of the Washington constitution provides, "No person shall be compelled in any criminal case to give evidence against himself." WASH. CONST., art. I, § 9. Article I, section 9 provides the same protection as the Fifth Amendment. *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996).

A person who seeks to prevent disclosure of evidence under the privilege against self-incrimination must show that the evidence is (1) compelled, (2) testimonial, and (3) incriminatory. *United States v. Hubbell*, 530 U.S. 27, 34-38, 120 S. Ct. 2037, 147 L. Ed. 2d 24 (2000). Whether an act of production is testimonial in this regard is a fact-intensive determination. *In re Grand Jury Subpoena, Dated April 18, 2003*, 383 F.3d 905, 909 (9th Cir. 2004).

Generally, "a person must invoke the Fifth Amendment protections in order for them to apply." *State v. Warner*, 125 Wn.2d 876, 884, 889 P.2d 479 (1995). A person may invoke the privilege against self-incrimination under the Fifth Amendment when that person is compelled to provide testimonial evidence that may be incriminating. *Hubbell*, 530 U.S. at 34-35. Although both constitutional provisions refer to criminal cases, one may assert the privilege against self-

incrimination in any proceeding. *Alsager v. Bd. of Osteopathic Med. & Surgery*, 196 Wn. App. 653, 664, 668-69, 384 P.3d 641 (2016), *cert. denied*, 138 S. Ct. 165 (2017).

A "party in a civil proceeding need not answer questions 'where the answer might incriminate him in future criminal proceedings.'" *Alsager*, 196 Wn. App. at 668 (quoting *State v. King*, 130 Wn.2d 517, 524, 925 P.2d 606 (1996)). Further,

> "[t]he privilege [against self-incrimination] not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those [answers] which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime."

*Eastham*, 28 Wn. App. at 528 (alterations in original) (quoting *Hoffman v. United States*, 341 U.S. 479, 486-87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)). In a civil proceeding, however, "the right against testifying 'necessarily attaches only to the question being asked and the information sought by that particular question.'" *Alsager*, 196 Wn. App. at 668-69 (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)); *State v. Hobble*, 126 Wn.2d 283, 289-90, 892 P.2d 85 (1995).

B.      Article I, Section 9—*Gunwall* Analysis

Brelvis argues that we must engage in an analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), to determine if article I, section 9 of the Washington Constitution provides greater protections than the Fifth Amendment in the context of a corporation invoking the right against self-incrimination. We disagree.

Washington courts have already determined that article I, section 9 provides the same protection as the Fifth Amendment. *Easter*, 130 Wn.2d at 235-36; *State v. Russell*, 125 Wn.2d 24, 57-58, 882 P.2d 747 (1994); *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 91, 507 P.2d 1165 (1973); *State v. Terry*, 181 Wn. App. 880, 889, 328 P.3d 932 (2014).

Accordingly, a *Gunwall* analysis is unnecessary. We analyze Brelvis' self-incrimination arguments only under the Fifth Amendment.

C.      Invocation of the Privilege Against Self-Incrimination

Brelvis claims that the superior court erred in granting the AGO's motion to enforce the CID because it violates Brelvis' constitutional privilege against self-incrimination. Brelvis also contends that both individuals and entities can properly invoke the privilege against incrimination.

1. Brelvis' Privilege Against Self-Incrimination

Brelvis contends that the privilege against self-incrimination applies generally to both individuals and entities. We disagree.

Both state and federal courts have determined that corporate[3] defendants "cannot claim a Fifth Amendment privilege with regard to corporate records." *United States v. Blackman*, 72 F.3d 1418, 1426 (9th Cir. 1995). More broadly, in *Braswell*, the Supreme Court held that "it is well established that . . . artificial entities are not protected by the Fifth Amendment." 487 U.S. at 102; *accord, Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 134 F. Supp. 3d 1199, 1202 (N.D. Cal. 2015) ("Case law is dispositive that the corporate defendants may not assert Fifth Amendment rights."). Washington case law mirrors these holdings. In *Diaz*, 165 Wn. App. at 74, the court held it was well settled that a corporation does not have a Fifth Amendment privilege; and in *Mecca*, 82 Wn.2d at 91, our state Supreme Court held that neither corporations nor corporate officers acting on behalf of the corporations are protected by the constitutional privilege against self-incrimination.

---

[3] Here and at other points in the Analysis, we cite case law dealing with corporations. Brelvis is a limited liability company (LLC). No party argues that we should not rely on otherwise relevant case law applying to corporations in deciding the issues raised in this appeal.

Brelvis contends that other case law has eroded these holdings. Citing *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014), and *Commonwealth v. Doe*, 405 Mass. 676, 679, 544 N.E.2d 860 (1989), Brelvis argues that the privilege against self-incrimination may be invoked by corporate officers acting on behalf of the corporation. However, neither *Hobby Lobby* nor *Doe* support this proposition.

In *Hobby Lobby*, the United States Supreme Court held that corporations were "persons" for the purpose of the application of the Religious Freedom Restoration Act of 1993, 107 Stat. 1488, 42 U.S.C. § 2000bb, but did not purport to expand or alter a corporation's rights under the Fifth Amendment. *Hobby Lobby*, 134 S. Ct. 2768-69. More pointedly, *Hobby Lobby* did not abandon or alter the Supreme Court's holding in *Braswell* that artificial entities such as corporations "are not protected by the Fifth Amendment." 487 U.S. at 102.

*Doe*, on the other hand, addressed the individual rights of a records custodian, not the rights of a corporation to assert a right against self-incrimination. 405 Mass. at 679 n.4. The court stated flatly that it did not "reach the issue whether a corporation has art[icle] XII rights [rights against self-incrimination]." *Id.* at 679. Even if we were inclined to follow Massachusetts law, it would not serve Brelvis' case.

Finally, Brelvis points out that *Braswell* has never been cited by a Washington State court. That may be true, but allowing a state court to disregard established Supreme Court precedent simply by not citing it would leave little of the Supremacy Clause, U.S. CONST., art. VI, cl. 2. This invitation we decline.

Under established case law, a corporate entity does not enjoy a constitutional privilege against self-incrimination, and its officers and agents may not invoke that privilege on its behalf.

2. Proper Invocation of the Right Against Self-Incrimination

Brelvis argues that it properly invoked its right against self-incrimination because the answers to interrogatories were testimonial and Mesnekoff could have been personally incriminated. Even if we assume that the answers to the CID were testimonial and that Brelvis was able to invoke a right against self-incrimination, Brelvis failed to properly invoke its right.

The right against self-incrimination must be invoked "through specific, individual objections, not by invoking blanket constitutional protection to avoid participating in the proceedings." *Alsager*, 196 Wn. App. at 668. Our Supreme Court has explained that in order to invoke the privilege against self-incrimination, "the danger of incrimination must be substantial and real, not merely speculative." *Hobble*, 126 Wn.2d at 290. A "witness cannot establish the privilege [against self-incrimination] merely by making a 'blanket declaration . . . that he cannot testify for fear of self-incrimination.'" *State v. Levy*, 156 Wn.2d 709, 732, 132 P.3d 1076 (2006) (alterations in original) (quoting *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975)). A witness who does not assert the privilege against self-incrimination as to specific topics or requests does "not properly invoke it as to matters potentially related to criminal liability." *Alsager*, 196 Wn. App. at 669.

Brelvis failed to produce any responsive documents. Brelvis and Mesnekoff also failed to properly object to the CID, including its requests for production and interrogatories, and failed to explain how responding to those requests for production and interrogatories would be testimonial and incriminating. Blanket assertions of privilege are insufficient to invoke the Fifth Amendment protections. *Levy*, 156 Wn.2d at 732; *Alsager*, 196 Wn. App. at 668. As stated above, Mesnekoff, in his capacity as Brelvis' custodian, may not resist a request for production of records on Fifth Amendment grounds. *See Braswell*, 487 U.S. at 108-09. Furthermore, even

11

assuming that interrogatories in the CID might tend to incriminate Mesnekoff in his individual capacity, neither Brelvis nor Mesnekoff properly invoked the Fifth Amendment privilege with regard to those interrogatories. Accordingly, this argument fails.

D. RCW 10.52.090

Brelvis argues that the superior court erred by ordering it to comply with the CID because, without a grant of immunity, compliance with the CID would violate RCW 10.52.090. We disagree.

First, as discussed above, Brelvis has not validly asserted any privilege protecting it from the CID. Second, RCW 10.52.090 does not apply to the CID.

RCW 10.52.090 states:

> In every case where it is provided in this act that a witness shall not be excused from giving testimony tending to criminate himself or herself, no person shall be excused from testifying or producing any papers or documents on the ground that his or her testimony may tend to criminate or subject him or her to a penalty or forfeiture; but he or she shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter or thing concerning which he or she shall so testify, except for perjury or offering false evidence committed in such testimony.

The reviser's note to RCW 10.52.090 refers to the note following RCW 9.01.120 for the definition of "this act." The note following RCW 9.01.120, in turn, states that "this act" includes various titles and sections, including former RCW 19.60.010 (2011), RCW 19.60.025, .040, .042, .045 and .050, former RCW 19.60.055 (1991), and RWC 19.60.057 and .060, which address pawnbrokers and secondhand dealers. "This act," however, does not include RCW 19.86.110 or RCW 19.86.020. RCW 9.01.120 reviser's notes.

The AGO sent a CID to Brelvis pursuant to RCW 19.86.110 as part of its investigation into whether Brelvis had violated RCW 19.86.020. Based on the plain language of RCW

10.52.090 and the scope of its reference to "this act" in the reviser's notes, RCW 10.52.090 does

not apply to the AGO's investigation under chapter 19.86 RCW.[4]  Thus, Brelvis' argument fails.

E.      RCW 19.86.110(8)

Brelvis argues that the superior court erred in relying in part on Brelvis' failure to file a

petition to modify or set aside the CID within the 20-day time period set forth in RCW

19.86.110(8).  At the March 24, 2017 hearing, the superior court explained:

> The Court finds that the request for discovery being sought by the State [via the CID] does not implicate or constitute an unreasonable search under either the Fourth Amendment, the Fifth Amendment, Article I, Subsection 7 of the State Constitution.
>
> The Court finds that the definition of "person" as it applies to this particular statute includes the Respondent, Brelvis Consulting, LLC.  The Court finds that the Respondent did not move to set aside the [CID] within 20 days, as is required by the statute.  The Court grants the motion of [the] State of Washington.

Verbatim Report of Proceedings (Mar. 24, 2017) at 24.

Assuming, without deciding, that the superior court erred in relying on Brelvis' failure to

meet the 20-day deadline, it is of no moment to this appeal.  Even without that ground, the CID

survives Brelvis' challenges to it, as shown by this opinion.

## IV. ARTICLE I, SECTION 7

Brelvis argues that the requirement to comply with the CID is an unconstitutional

intrusion into private affairs without authority of law under article I, section 7 of the Washington

Constitution.  Article I, section 7 states, "No person shall be disturbed in his private affairs, or

his home invaded, without authority of law."  Our analysis of an issue under article I, section 7

consists of two components.  *State v. Reeder*, 184 Wn.2d 805, 814, 365 P.3d 1243 (2015).  First,

---

[4] The AGO's interrogatory number 11 references RCW 18.28, 19.134, 19.86, and 19.190.  "[T]his act" does not include those chapters.  RCW 9.01.120 reviser's notes.

we consider whether a private affair has been disturbed. *Id.* Second, we consider whether the disturbance was justified by authority of law. *Id.*

A.    Private Affair

    1.  Brelvis

Brelvis argues that its business records are private affairs that are subject to protection under article I, section 7.

As a threshold issue, the AGO apparently takes the position that the protections of article I, section 7 are limited to Washington citizens. This reading is supported by the definition of "private affairs" as those "'interests which *citizens* of this state have held, and should be entitled to hold, safe from government trespass.'" *State v. Jorden*, 160 Wn.2d 121, 126, 156 P.3d 893 (2007) (emphasis added) (quoting *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 339, 945 P.2d 196 (1997)).

As noted, however, article I, section 7 states, "No *person* shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I § 7 (emphasis added). To reduce the scope of the provision to Washington citizens on the basis of this statement from *Jorden* and *Maxfield* would be to significantly confine its reach in reliance on cases which did not analyze that potentially significant a change. In addition, *Jorden*'s reference to "citizens" can be harmonized with the use of "person" in article I, section 7. The constitutional guarantee would extend to all persons within the state of Washington, while the determination of what counts as a private affair would look to interests the state's citizens have held and should be entitled to hold safe from government trespass. For these reasons, we decline any suggestion that the shield of article I, section 7 is limited to state citizens.

Alternatively, if article I, section 7 were confined to state citizens, Brelvis would fall outside its scope and its claims under article I, section 7 would fail for that reason. In *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1014, 194 L. Ed. 2d 71 (2016), the Court held that a real estate investment trust takes the citizenship of its members for purposes of diversity jurisdiction. In reaching this conclusion the court noted that *Louisville, C. & C. R. Co. v. Letson*, 43 U.S. 497, 558, 11 L. Ed. 353 (1844), held that for diversity jurisdiction a corporation is a citizen of the state it is created by and doing business in.

A rule that corporations are citizens for diversity purposes, though, does not travel well into other settings. First, the general legal definition of "citizen" does not include corporations and other business entities. *Black's Law Dictionary* 298 (10th ed. 2014) defines "citizen" as

> 1. Someone who, by either birth or naturalization, is a member of a political community, owing allegiance to the community and being entitled to enjoy all its civil rights and protections; a member of the civil state, entitled to all its privileges.

Neither a corporation, limited liability company, nor similar entity is born or naturalized. Therefore, none of these entities are citizens under this general definition. *Black's Law Dictionary* does recognize the diversity exception to this rule in its second definition of "citizen":

> 2. For diversity-jurisdiction purposes, a corporation that was incorporated within a state or has its principal place of business there. 28 USCA § 1332(c)(1).

*Id.* This recognition of corporate citizenship in federal diversity jurisdiction only highlights the exclusion of these business entities from the class of citizens generally.

Second, the Privileges and Immunities Clause of our state constitution treats citizens and corporations as separate categories. That clause states:

> No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

WASH. CONST. art. I § 12. In *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 807-08, 83 P.3d 419 (2004), our Supreme Court described the background of the clause:

> Article I, section 12 of the Washington State Constitution was modeled after article I, section 20 of the Oregon State Constitution. . . .
>
> The Washington provision differs from that of the Oregon provision only in that the Washington provision added a reference to corporations, which our framers perceived as manipulating the lawmaking process. Thompson, 69 Temp. L.Rev. at 1253. Washington's addition of the reference to corporations demonstrates that our framers were concerned with undue political influence exercised by those with large concentrations of wealth, which they feared more than they feared oppression by the majority.
>
> The separate listing of "citizen" and "corporation" in the state Privileges and Immunities

Clause shows that each were viewed as discrete categories by the framers. To view "corporation" as a subcategory of "citizen" would make the former superfluous in the constitution, a result the court is to avoid in interpretation. *State ex rel. Heavey v. Murphy*, 138 Wn.2d 800, 811, 982 P.2d 611 (1999). This conclusion is buttressed by the fact that "corporation" was specifically added by the framers of the Washington Constitution to guard against "undue political influence exercised by those with large concentrations of wealth." *Grant County*, 150 Wn.2d at 808. The framers acted deliberately in treating "citizen" and "corporation" as different categories.

This authority counsels that corporate entities should not be deemed state citizens for purposes of article I, section 7. Thus, if article I, section 7 applies only to state citizens, Brelvis would not be protected by this provision.

We conclude above, however, that article I, section 7 is not confined to state citizens, but

rather applies to "persons." Assuming that Brelvis is a person for these purposes, we next address whether governmental conduct, in this case the CID, intrudes on a private affair. To answer that question, courts look at "'the nature and extent of the information which may be obtained as a result of the government conduct' and at the historical treatment of the interest asserted." *State v. Hinton*, 179 Wn.2d 862, 869, 319 P.3d 9 (2014) (quoting *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007)).

In *Miles*, a state agency issued an administrative subpoena for the bank records of an individual suspected of securities fraud. In striking down the subpoena under article I, section 7, the court explained that its holding in *State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990), that an individual's garbage bags count as private affairs was based, in part, on the observation that "garbage bags could include sensitive information about business records, bills, correspondence, tax records, and so on." *Miles*, 160 Wn.2d at 245. The court then held that personal banking records are private affairs under the state constitution because business records, bills, and financial records could reveal "sensitive personal information, such as 'where the person has travelled, the person's reading habits, and the person's financial condition.'" *Chase*, 1 Wn. App. 2d at 804 (quoting *Reeder*, 184 Wn.2d at 244). A corporation's business records, however, are distinct from personal records. *Id*. at 805.

Each of these types of information is the sort of thing that would be sensitive personal information for a natural person, but not for a legal abstraction like a corporation or LLC. *See id*. at 804-05 The CID requested information exclusively regarding Brelvis' business practices. The information sought would not reveal potentially sensitive personal information of any individuals and does not meet the standard for a private affair under article I, section 7.

For these reasons, Brelvis' business records are not protected under article I, section 7 of the Washington Constitution.

2. Mesnekoff

Brelvis contends that Mesnekoff can also assert a privacy interest in Brelvis' business records as a member and manager of Brelvis. Division One of our court recently rejected a similar argument in *Chase*, 1 Wn. App. 2d at 799. In *Chase*, the defendant, a shareholder and principal officer in a corporation, attempted to assert a privacy interest in the corporations' banking records. 1 Wn. App. 2d at 801-02. The court determined that the defendant could not assert a privacy interest in the corporation's banking records because those records have not been historically considered part of a shareholder or officer's private affairs and "a corporation's financial transactions do not reveal sufficiently sensitive information about a person's personal contacts and associations." *Id*. at 807. Therefore, Mesnekoff does not have a personal privacy interest in Brelvis' business records under article I, section 7.

With these conclusions, it is unnecessary to examine the second component in analyzing claims under article I, section 7: whether the disturbance was justified by authority of law. However that may be resolved, the CID did not violate this constitutional provision.

V. FOURTH AMENDMENT

Brelvis also maintains that the CID constituted an unreasonable search under the Fourth Amendment. We disagree.

In *Steele v. State ex rel Gorton*, our Supreme Court considered whether a CID issued to a corporation pursuant to RCW 19.86.110 was reasonable in the context of the Fourth Amendment. 85 Wn.2d 585, 537 P.2d 782 (1975). In *Steele*, the AGO issued a CID to an

employment agency as part of an investigation into unfair or deceptive practices. It requested

records related to

> services rendered to applicants for employment; the manner of payment agreed upon by the applicant and respondent; training materials and manuals supplied by the franchisor to the respondent; applications for employment that had been placed in the inactive file in the past year; refunds to applicants or fee adjustments; certain pleadings filed in courts of record of this State in which respondent was a party; certain contracts between respondent and lending or financial institutions; and certain advertisements for employment placed by the agency in local newspapers.

*Id.* at 587.

> The court observed that:

> [W]e start with the well-established proposition that although corporations and businesses are protected by the Fourth Amendment, . . . the privacy of their books and records is not as stringently protected as is that of the privacy of individuals. Indeed, both in England and in the United States, corporations and businesses historically have been subject to wide investigative powers.

*Id.* at 592-93 (citations omitted). The court explained that the test

> for determining the reasonableness of a subpoena . . . or similar order . . . requires that (1) the inquiry is within the authority of the agency; (2) the demand is not too indefinite, and (3) the information sought is reasonably relevant [to the purpose of the subpoena].

*Id.* at 594.

Considering the first factor, the court stated, "[T]here is no question but that RCW

19.86.080 and RCW 19.86.110(1) accord to the Attorney General power to investigate possible

unfair or deceptive practices." *Id.* at 594. Turning to the second factor, the court determined that

the demand was not impermissibly indefinite because "[t]here was no general or

[undiscriminating] request for all business records. Rather, the types of records and information

sought were in all instances explained with reasonable clarity" and were limited to records less

than three years old. *Id.* Finally, the court concluded that the information was reasonably

relevant to the investigation because "the requested information was directed at ascertaining the

19

manner in which the [agency] filled supposed job openings and dealt with applicants seeking employment." *Id*. at 595.

After considering the three factors, the Supreme Court concluded:

Therefore, by application of the three-prong test . . . we are convinced that the instance [CID] did not violate the prohibitions of the Fourth Amendment. Situations could, of course, arise where the Attorney General arbitrarily serves a [CID] upon a business. . . . But the record in the instant case discloses that the Attorney General did not act arbitrarily in instituting the investigation. On the contrary, the record discloses that an adequate foundation for the investigation existed since the Attorney General had received various complaints with respect to the operation of the employment agency.

*Id*. We now examine the present CID under the test in *Steele*.

B.      Authority of the Agency

The AGO issued a CID to Brelvis as part of its investigation into whether Brelvis had engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce under RCW 19.86.020. Specifically, the AGO was investigating whether Brelvis made misrepresentations about student loan forgiveness and committed other violations of Washington's Debt Adjusting Act, chapter 18.28 RCW, and Consumer Protection Act, chapter 19.86 RCW. Our Supreme Court has held that "there is no question but that RCW 19.86.080 and RCW 19.86.110(1) accord to the Attorney General power to investigate possible unfair or deceptive practices." *Steele*, 85 Wn.2d at 594. Therefore, the AGO had the authority to investigate whether Brelvis engaged in possible unfair or deceptive business practices.

C.      Definiteness of Demand

The CID requested several categories of documents and contained interrogatories regarding matters such as advertisements, payment records, customer complaints, client intake and communication records, and other information about Brelvis' business, its employees, and litigation against the company. The CID requested customer information related only to

Washington consumers, rather than all of Brelvis' clients. The United States Supreme Court has approved broad categorical requests pursuant to a subpoena. *See*, *e.g.*, *McPhaul v. United States*, 364 U.S. 372, 374, 81 S. Ct. 138, 5 L. Ed. 2d 136 (1960) (approving a subpoena for all records, correspondence and memoranda pertaining to the organization of, the affiliation with other organizations and all monies received or expended by the entity). The CID issued to Brelvis was properly focused and definite.

D.    Relevance of Information Sought

As described above, the CID requested several categories of documents and contained interrogatories covering matters such as advertisements, payment records, customer complaints, client intake, communication records, Brelvis' employees, and litigation against the company. The CID requested customer information related only to Washington consumers, rather than all of Brelvis' clients. All of the information requested in the CID is reasonably relevant to the AGO's investigation into possible misrepresentations regarding student loan forgiveness and other unfair methods of competition or unfair or deceptive acts by Brelvis.

E.    Not Issued Arbitrarily

Brelvis argues that the AGO arbitrarily issued its CID because it did not have an adequate foundation of complaints to initiate its investigation. As part of this argument, Brelvis asserts that the AGO improperly conflated the Student Loan Help Center, a name under which Brelvis does business, with the National Student Loan Help Center. We disagree.

"[T]he primary purpose of the Fourth Amendment is to protect the privacy of an individual from arbitrary intrusions by government officials." *State v. Smith*, 88 Wn.2d 127, 140, 559 P.2d 970 (1977). "Arbitrary" is generally defined as "relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or

21

procedures." BLACK'S LAW DICTIONARY 125 (10th ed. 2014). In *Steele*, our Supreme Court recognized that situations could "arise where the Attorney General arbitrarily serves a civil investigative demand upon a business." 85 Wn.2d at 595.

Here, though, the record shows that the AGO did not act arbitrarily in instituting the investigation. The AGO relied on the August 3, 2016 complaint in issuing the CID. Although the complaint identified the National Student Loan Help Center as its subject, it also included an Internet address for the Student Loan Help Center and a link to the BBB's Internet complaint page regarding the Student Loan Help Center. Therefore, the AGO could have reasonably interpreted the August 3 complaint to pertain to Brelvis, doing business as the Student Loan Help Center. More importantly, the BBB page clearly relates to Brelvis and describes a "pattern of complaints" regarding Brelvis' failure to consolidate loans and respond to customer requests for refunds. CP at 164. Therefore, the AGO had an adequate foundation to initiate its investigation and did not act arbitrarily in doing so.

With this, the *Steele* test has been satisfied, and issuance of the CID did not violate Brelvis' rights under the Fourth Amendment.

## VI. APPELLATE FEES AND COSTS

The AGO asks that we award the State attorney fees on appeal under RAP 18.1(a). RAP 18.1(a) allows a party to recover fees on appeal "if applicable law grants a party the right to recover reasonable attorney fees or expenses." RCW 19.86.080(1) states,

> The attorney general may bring an action in the name of the state . . . against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee.

In the present case, the State asks the court to enforce the CID. Under RCW 19.86.110(5)(a) and (b), one receiving a CID must produce documentary material demanded and

No. 50235-6-II

answer interrogatories subject to restrictions. Brelvis did not produce documents or answer interrogatories in response to a CID we have determined to be valid. Thus, the present case is an action "to restrain and prevent the doing of any act herein prohibited or declared to be unlawful" under RCW 19.86.080(1). Therefore, we award reasonable appellate attorney fees to the State under RCW 19.86.080(1).

CONCLUSION

The superior court properly required Brelvis to comply with the CID. Therefore, we affirm its decision.

Bjorgen, J.

We concur:

Sutton, J.

Penoyar, J.P.T.

23