# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 49857-0-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| CITY OF PUYALLUP, | |
| Respondent. | |

MAXA, A.C.J. – This case involves whether posts by an elected public official on a personal Facebook page are public records subject to the Public Records Act (PRA), chapter 42.56 RCW. Arthur West made a PRA request to the City of Puyallup for records relating to a Facebook page associated with Julie Door, a Puyallup City Council member. The trial court ruled that Door's Facebook posts did not constitute public records and granted summary judgment in favor of the City.

We confirm that a public official's posts on a personal Facebook page can constitute an agency's public records subject to disclosure under the PRA if the posts relate to the conduct of government and are prepared within a public official's scope of employment or official capacity. However, we hold that Door's particular Facebook posts at issue in this case were not public records as a matter of law because she did not prepare them within the scope of her official

capacity as a City Council member.  Accordingly, we affirm the trial court's summary judgment order.

FACTS

On March 25, 2016, West submitted a public records request to the City that asked for "All City related public records sent to or received at Council Member Door's 'Friends of Julie Door' Facebook site, 2014-2016, or any such records in the possession of the City."  Clerk's Papers (CP) at 215.  Door was a member of the Puyallup City Council.

The City conducted a search of its official Facebook page for any records sent to the Friends of Julie Door Facebook page and located no such records.  The City also searched its archiving system for all documents sent and received with the term "Friends of Julie Door," and located one message to a City email address inviting the recipient to "like" the Friends of Julie Door Facebook page.  The City produced a copy of that message to West.  The City disclosed no other documents.

West filed a PRA action against the City, alleging that the City violated the PRA by not disclosing posts on the Friends of Julie Door Facebook page.  The City filed a summary judgment motion, arguing that the posts were not public records.

In support of its motion, the City submitted a declaration from Door.  Door's declaration stated that the Facebook page did not contain any information related to the conduct of City government or the performance of any government function.  She explained that the Facebook page was not used or intended to be used to conduct any governmental function and had not been used or referenced by the City at City meetings or cited in support of any agency action.  She also stated that the page was publicly accessible, and that the account had received only one

immaterial private message. Finally, Door stated that the Facebook page was a campaign site used for campaign purposes or to provide information to her supporters.

Door's declaration did not state who had made the posts on the Friends of Julie Door Facebook page. However, Door never denied that she was the person who prepared the posts.

West filed a response to the motion, supported by his own declaration. He later filed a second declaration. His declarations included publically available posts from the Friends of Julie Door Facebook page, which West argued contained information related to City business and public comments on a decision before the City Council. These posts fell into three general categories.

First, several posts briefly referenced various issues, including completing a Sound Transit survey; the City's construction of new sidewalks; a project on a historic piece of farmland in the City; the Puyallup police chief's presentation regarding the police department's strategic plan; Door's participation in the Association of Washington Cities convention; Door's service on a scholarship committee; an open house regarding the widening of Shaw Road in the City; the City's budget document; a link to another City Council member's Facebook page; registration for the National Night Out; the ribbon cutting for a new Pierce Transit connector; Sound Transit's options for parking improvement, a related survey, and an invitation to a City council meeting on the issue; Sound Transit's presentations at a City Council study session and a City Council meeting; Association of Washington Cities training; and a City Council meeting agenda.

Second, several posts referenced and contained links to the City's official Facebook posts about various issues, including the City's water testing; regional growth; an open house regarding Sound Transit; a ribbon-cutting event for a new park; the City's public works

department; car wash awareness month; City Council meeting agendas; volunteering for City boards and commissions; the city's Santa parade and tree lighting, the City's Concert in the Park program, a vacancy on the City's parks and recreation advisory board; meetings regarding housing focus groups; the City Council's decision to co-sponsor a parade for high school state champions; and a City Council study session and special meeting.

Third, a few posts referenced and contained links to the Puyallup Police Department's official Facebook posts about the city's homeless population, a jail camera lawsuit in federal court, and the block watch program.

In addition, the Friends of Julie Door Facebook page contained comments from individuals regarding a few of the posts. Door did not respond to any of the comments. After West's PRA request, Door posted a message stating that she was prohibited from answering specific questions about the City's actions on Facebook and that questions should be directed to Door's work-related email address and telephone number.

The trial court granted summary judgment in favor of the City and dismissed West's PRA claims. The court ruled that Door's Facebook posts were not public records because they were not prepared, owned, used, or retained by the City and the City had no control over the Facebook page. The court also refused to adopt a rule that a Facebook post by an elected official that refers to a public agency is a public record.

West appeals the trial court's order granting summary judgment in favor of the City.

ANALYSIS

A.     STANDARD OF REVIEW

We review de novo an agency's action in responding to a PRA request. RCW 42.56.550(3); *White v. Clark County*, 199 Wn. App. 929, 934, 401 P.3d 375 (2017), *review*

*denied*, 189 Wn.2d 1031 (2018). This de novo review includes summary judgment orders involving the PRA. *John Doe P v. Thurston County*, 199 Wn. App. 280, 289, 399 P.3d 1195 (2017). We stand in the same position as the trial court on PRA matters when the record consists of documentary evidence. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016).

When a summary judgment motion involves factual issues, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017). If a moving defendant shows the absence of any evidence supporting the plaintiff's claim, the burden shifts to the plaintiff to show a genuine issue of material fact. *Id.* at 183. But when summary judgment presents only legal issues, we determine whether the moving party is entitled to judgment as a matter of law. CR 56(c).

B.      PRA LEGAL PRINCIPLES

The PRA presents a mandate for the broad disclosure of public records. *John Doe A*, 185 Wn.2d at 371. RCW 42.56.030 directs that the PRA be liberally construed in favor of disclosure. *SEIU Healthcare 775NW v. Dep't of Social & Health Servs.*, 193 Wn. App. 377, 391, 377 P.3d 214, *review denied*, 186 Wn.2d 1016 (2016). A state or local agency has an affirmative duty to disclose public records upon request unless the PRA or another statute exempts the records from disclosure. *John Doe A*, 185 Wn.2d at 371-72.

RCW 42.56.010(3) defines a "public record" as consisting of three elements: (1) "any writing" (2) "containing information relating to the conduct of government or the performance of any governmental or proprietary function" (3) "prepared, owned, used, or retained by any state

or local agency." *See Nissen v. Pierce County*, 183 Wn.2d 863, 879, 357 P.3d 45 (2015). All three elements must be present for information to constitute a public record.

C.    FACEBOOK POSTS AS PUBLIC RECORDS

Initially, we confirm that postings on a "personal" Facebook page can constitute public records if the RCW 42.56.010(3) definition is satisfied. This rule is dictated by the Supreme Court's decision in *Nissen* and this court's decision in *West v. Vermillion*, 196 Wn. App. 627, 384 P.3d 634 (2016), *review denied*, 187 Wn.2d 1024, *cert. denied*, 138 S. Ct. 202 (2017).

In *Nissen*, the Supreme Court held that an elected county prosecutor's work-related text messages prepared on his private cell phone in his official capacity and within the scope of his employment were public records subject to disclosure under the PRA. 183 Wn.2d at 882-83, 888. The court rejected the argument that an agency employee can create a public record only when using agency property. *Id.* at 877. The court stated that "employees can use their own property and still be within the scope of their employment." *Id.*

In *Vermillion*, this court held that e-mails a Puyallup City Council member sent and received on his personal computer through a personal e-mail account were subject to disclosure under the PRA if they otherwise met the definition of a public record.[1] 196 Wn. App. at 630, 636-37. The court rejected the argument that the PRA does not apply to documents in a personal e-mail account. *Id.* at 636; *see also O'Neill v. City of Shoreline*, 170 Wn.2d 138, 150, 240 P.3d 1149 (2010) (holding that information on a personal computer is subject to the PRA).

---

[1] West argues that *Vermillion* is binding on this court under principles of collateral estoppel and res judicata, apparently because that case also involved the City of Puyallup, as well as under stare decisis. But *Vermillion* addressed whether public records could be generated on a personal website and e-mail account and related constitutional issues, and did not address the elements of a public record. *See* 196 Wn. App. at 636-40. Therefore, collateral estoppel and res judicata do not apply here.

Based on these cases, posts on social media sites like Facebook potentially can constitute public records, just like any other written communication. The court in *Nissen* emphasized that the PRA must apply when public employees "use cell phones to conduct public business by creating and exchanging public records – text messages, e-mails or anything else." 183 Wn.2d at 884. The same rule necessarily applies to public officials using Facebook to "conduct public business." Therefore, a Facebook post can constitute a public record – but only if the statutory requirements are satisfied.

*Nissen* and *Vermillion* also establish that "agency employees are responsible for searching their files, devices, and accounts for records responsive to a relevant PRA request." *Nissen*, 183 Wn.2d at 886; *see also Vermillion*, 196 Wn. App. at 636. If an employee claims that information in personal accounts are not public records, he or she must submit an affidavit or declaration stating facts sufficient to support that claim. *Nissen*, 183 Wn.2d at 886. These rules necessarily apply to a personal Facebook account when a PRA request has been made for information in such an account.[2]

D.      PUBLIC RECORD ANALYSIS

Here, there is no dispute that the Friends of Julie Door Facebook posts were writings, and we assume without deciding that at least some of the posts related to the conduct of government or a government function. The primary question on appeal involves the third part of the RCW 42.56.010(3) definition: whether the City can be deemed to have "prepared" Door's Facebook posts. The answer depends on whether Door was acting within the scope of her employment or

---

[2] Door did file the type of declaration contemplated in *Nissen*, which stated that she had reviewed the Facebook posts and had confirmed that the posts did not constitute public records. The record does not show whether the City asked Door to search the Facebook page for public records before it responded to West's PRA request or only after West filed suit.

official capacity as a City Council member. We hold that Door was not acting within her official capacity when she prepared the Facebook posts.

1. Existence of a "Writing"

The first element of a public record under RCW 42.56.010(3) is the existence of a "writing." RCW 42.56.010(4) broadly defines "writing" to encompass "every . . . means of recording any form of communication." And RCW 42.56.010(3) states that definition of public record applies "regardless of physical form or characteristics" of the record.

The City does not dispute that a message posted on Facebook constitutes a writing for purposes of the PRA.

2. Information Relating to Conduct of Government

The second element of a public record under RCW 42.56.010(3) is that the writing contain "information relating to the conduct of government or the performance of any governmental or proprietary function." "This language casts a wide net." *Nissen*, 183 Wn.2d at 880. A record satisfies this element if it contains "any information that refers to or impacts the actions, processes, and functions of government." *Id.* at 880-81. This element is established even if the information only indirectly relates to the conduct of government or to government functions. *Id.* at 880.

Conversely, personal communications of government officials that are not work-related are not public records. *See Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012) (stating that personal emails of public employees are not public records).

Here, almost all of Door's Facebook posts were merely informational and did not directly address the "conduct" or "performance" of government functions. On the other hand, almost all of the posts at least referred to government activities. Because the City does not expressly

address this element in its briefing, we assume without deciding that at least some of the posts satisfy the second element of the public record definition.

       3.    Records Prepared by a Government Agency

The third element of a public record under RCW 42.56.010(3) is that the writing be "prepared, owned, used, or retained by any state or local agency." A "local agency" includes a city and "any office, department, division, bureau, board, commission, or agency thereof." RCW 42.56.010(1).

Here, West does not claim that the City owned, used, or retained the posts on the Friends of Julie Door Facebook page. Instead, he argues that the City, through its City Council member Door, must be deemed to have "prepared" the posts. We disagree.

       a.    Scope of Employment Requirement

The court in *Nissen* noted that because an agency must act through its employees and other agents, an act performed by an agency employee within the scope of his or her employment is tantamount to an act by the agency. 183 Wn.2d at 876. This principle means that a record an agency employee prepares "in the scope of employment" necessarily is a record prepared by the agency. *Id.* Accordingly, the court held that records prepared by agency employees in the scope of employment may be public records subject to disclosure under the PRA if all of the requirements of RCW 42.56.010(3) are satisfied. *Id.* at 879.

The court also stated that records an agency employee prepares in his or her "official capacity" can be public records. *Nissen*, 183 Wn.2d at 869, 873. Later, the court equated "official capacity" and "scope of employment" when referring to an elected official. *Id.* at 882.

The court expressly rejected the notion that "personal" communications that are work-related are subject to the PRA. *Id.* at 878. The court emphasized that only records the employee

9

prepares, owns, uses, or retains within the scope of employment qualify as public records. *Id.* The court stated, "It is worth repeating that records an employee maintains in a personal capacity will not qualify as public records, even if they refer to, comment on, or mention the employee's public duties." *Id.* at 881 n.8. One of the examples the court gave for an act not within the scope of employment was when employees "discuss their job on social media." *Id.* at 879.

The court held that "[a]n employee's communication is 'within the scope of employment' only when [1] the job requires it, [2] the employer directs it, or [3] it furthers the employer's interests." *Id.* at 878. In other words, the PRA applies only to "records related to the employee's public responsibilities." *Id.* at 879. The court stated that "[t]his inquiry is always case- and record-specific."[3] *Id.*

b.    Analysis

To determine whether Door was acting within the scope of her employment or official capacity as a City Council member when she prepared the Facebook posts, we must apply the three-part test outlined in *Nissen*: whether (1) her position required the posts, (2) the City directed the posts, or (3) the posts furthered the City's interests. 183 Wn.2d at 878.

Door's position as a City Council member clearly did not require that she post on Facebook. And there is no evidence in the record that the City in any way directed that Door prepare the posts. The question here is whether Door's posts furthered the City's interests.

---

[3] Regarding the scope of employment, there may be a conceptual distinction between "ordinary" agency employees and an agency's elected officials because elected officials technically may not be agency "employees." However, the Supreme Court did not draw such a distinction in *Nissen*, which involved communications by an elected official. *See* 183 Wn.2d at 882-83 (applying the scope of employment analysis to an elected prosecutor). Therefore, we do not address this issue.

The Supreme Court in *Nissen* did not provide much guidance regarding when an elected public official furthers an agency's interests. The court did state that a PRA claimant's allegation that the official prepared and received text messages in his "official capacity" was sufficient to meet the scope of employment requirement. *Nissen*, 183 Wn.2d at 882-83. The court also stated that using a private cell phone "to conduct public business" can create a public record. *Id.* at 877. These comments indicate that an elected official who acts in an "official capacity" or "conducts public business" furthers the agency's interests.

West urges us to adopt a bright line rule that a City Council member's Facebook post relating to a matter that will come before the City Council for a vote constitutes a public record. He argues that two specific posts fall within this category: a June 7, 2015 post and individual replies regarding the widening of Shaw Road (which West refers to as a pending land use decision), and two May 2016 posts and individual replies regarding a warehouse development adjoining Puyallup's eastern boundaries. West claims that these posts related to and solicited comments regarding land use issues pending before the City Council.

However, there is no evidence in the record that the Shaw Road widening project involved a land use issue or that the project would require a decision by the City Council. The City characterizes this work as a routine public works project that would not require a land use determination.

Regarding the warehouse development, the City presented unrefuted evidence that the project was outside the city limits and therefore would not involve City Council approval. In any event, the posts West references occurred after his PRA request in March 2016. Therefore, the City could not have provided those posts as responsive to the request because they did not yet exist. *Cf. West v. Dep't of Nat. Res.*, 163 Wn. App. 235, 245, 258 P.3d 78 (2011) (holding that

the agency did not violate the PRA because the requested emails had been lost and did not exist at the time of the request).[4]

West also argues that Door's posts involving the publication of City Council agendas and information related to City activities and City business were within the scope of her employment. The Shaw Road post also would fall into this general category.

However, there is no indication that Door was acting in her "official capacity" as a City Council member in preparing these posts. The Facebook page was not associated with the City and was not characterized as an official City Council member page. Instead, the Facebook page was associated with the "Friends of Julie Door," which according to Door's declaration was used to provide information to her supporters.

In addition, Door was not "conducting public business" on the Facebook page. The posts did not contain specific details of Door's work as a City Council member or regarding City Council discussions, decisions, or other actions. The posts merely provided general information about City activities and occasionally about Door's activities.

Finally, in a broad sense Door's informational posts may have furthered the City's interests to some minimal extent by providing a certain segment of the public with information about City events and activities. However, this tangential benefit to the City is not sufficient to establish that Door was acting within the scope of employment or her official capacity in disseminating general information about the City.

---

[4] West submitted subsequent PRA requests and filed a motion to amend his complaint to have those requests included in this case. However, the trial court denied the motion to amend and considered only the request at issue in this appeal.

4.    Summary

We hold that as a matter of law, the City cannot be deemed to have prepared the

Facebook posts at issue here because Door did not prepare the posts within the scope of her

employment or official capacity as a City Council member.  In making the posts, Door was not

acting in her official capacity, conducting public business, or otherwise furthering the City's

interests.[5]  Therefore, we hold that the Facebook posts here were not public records under the

PRA.

CONCLUSION

We affirm the trial court's order granting summary judgment in favor of the City and

dismissing West's PRA action.

MAXA, A.C.J.

We concur:

JOHANSON, J.

SUTTON, J.

---

[5] Amicus Washington State Association of Municipal Attorneys asserts several arguments that the City does not make.  Because we affirm on other grounds, we do not expressly address these arguments.