# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ARTHUR WEST, | No.  52843-6-II |
| Appellant, | |
| v. | |
| CLARK COUNTY, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON. J. — Arthur West sought from Clark County posts from David Madore's personal Facebook page, claiming the posts were public records prepared by Madore in his official capacity and Clark County's failure to produce the posts violated the Public Records Act (PRA).[1]  The superior court denied West's motion for a continuance, granted summary judgment to Clark County, dismissed the case with prejudice, and denied West's motion for reconsideration.

West argues that the superior court erred by granting summary judgment and dismissing the case because Madore's Facebook posts were public records as they relate to his official capacity and meet the "scope of employment" requirement set forth in *Nissen*.[2]  West also argues that the superior court erred by denying his request to admit the screenshots attached to his

---

[1] Ch. 42.56 RCW.

[2] *Nissen v. Pierce County*, 183 Wn.2d 863, 879, 357 P.3d 45 (2015).

declaration, or alternatively, the court erred by denying him a continuance, and the court erred by denying his motion for reconsideration.

We hold that Madore did not prepare the Facebook posts in his official capacity and the Facebook posts did not further Clark County's interest. Therefore, the Facebook posts are not public records under former RCW 42.56.010(3) (2012). We also hold that the superior court correctly ruled that the screenshots were not admissible and West's request for a continuance was not properly supported. Because the superior court did not err, we affirm.

FACTS

On or about July 25, 2016, West submitted a record request to Clark County for "[a]ny messages or communications concerning county business posted on, or sent to, or received at Councilor David Madore's Facebook page, or any Facebook page used by Mr. Madore to discuss county business, 2013 to present." Clerk's Papers (CP) at 9. Madore was elected to the Clark County Council in November 2012 for the 2013 through 2016 term. He was not reelected for a second term. The Facebook page at issue, which was Madore's personal Facebook page, was active before 2012, and it continued after his term ended in November 2016. Madore's personal Facebook page was open to the public.

After Clark County verified that it did not maintain a Facebook page for Madore, it contacted Madore to provide an affidavit. Madore's affidavit stated that his personal Facebook page did not contain any public records. Clark County sent Madore's affidavit to West on August 5.

West filed a PRA lawsuit on August 24, 2016, naming Clark County and Madore as parties. West later dismissed Madore as a party. West amended his complaint in March 2018, alleging

2

that Clark County "silently withheld records, failed to disclose records, and failed to make a reasonable search in violation of the [PRA]." CP at 17.

On his personal Facebook page, Madore posted statements regarding particular issues and then invited feedback in the comment section from his constituents. Madore never stated that he was posting on behalf of Clark County. West argued these Facebook posts were public records and were, thus, improperly withheld by Clark County.

Clark County moved for summary judgment, arguing that Madore's posts on his personal Facebook page were not records that the [c]ounty prepared nor did they further any [c]ounty interest, and thus, they were not "public records." CP at 12.

In response, West filed an ER 904 notice to have admitted the following Facebook posts:

- A post about Clark County's Comprehensive Plan from October 15, 2016;
- A post about a housing shortage from November 1, 2016;
- An article about protests in Portland with the statement that "[a]s a representative of the citizens of Clark County" from November 14, 2016;
- A post about job growth from November 22, 2016;
- A post about a raise in property taxes on December 6, 2016;
- A post regarding Clark County's budget on December 7, 2016;
- A post with a video regarding Clark County's budget on December 8, 2016;
- A post about property taxes from December 12, 2016;
- A post about a light rail project from December 22, 2016; and
- A post about a possible absorption of another county from December 28, 2016

CP at 29-30.

West filed a declaration which attached screenshots of other Facebook posts he claimed were from Madore's Facebook page, which screenshots were not included in his ER 904 submission. Clark County objected to the screenshots based on lack of authentication. West asked that the court either admit the screenshots or grant a CR 56(f) continuance to allow West time to authenticate the screenshots through Facebook.

3

The superior court allowed West's ER 904 submissions but denied his request to admit the screenshots because they were hearsay and not properly authenticated. The court did not explicitly deny West's motion for a continuance, but the court proceeded to decide the merits of his claim.

The superior court agreed with Clark County that the posts on Madore's personal Facebook page were not "public records" and therefore, Clark County did not improperly withhold any public records. Verbatim Report of Proceedings (VRP) (Apr. 25, 2018) at 28-29. The court commented that "the best description of Mr. Madore's Facebook site is as a megaphone. Mostly it's a litany of perceived wrongs." VRP at 28. The court found that "[t]he posts weren't required . . . or directed," "[Clark] County has no control over the social media site," and "it's clear that they're not in the furtherance of [c]ounty government or [c]ounty business." VRP at 28. The superior court granted summary judgment and dismissed the case with prejudice.

West requested reconsideration of the superior court's evidentiary ruling not to admit the screenshots. The superior court ruled that the motion was untimely. Nevertheless, the court ruled that "[t]o the extent that the motion is a motion to reconsider the finding that no PRA violation occurred, the motion is denied." CP at 135.

West appeals the summary judgment order and dismissal with prejudice, the evidentiary ruling denying admission of the screenshots, the denial of a continuance, and the denial of reconsideration.

## ANALYSIS[3]

### I. PUBLIC RECORDS

A. STANDARD OF REVIEW

We review de novo an agency's action in responding to a PRA request. *West v. City of Puyallup*, 2 Wn. App. 2d 586, 591, 410 P.3d 1197 (2018). "This de novo review includes summary judgment orders involving the PRA." *Puyallup*, 2 Wn. App. 2d at 591. We stand in the same position as the superior court on PRA matters when the record consists of documentary evidence. *Puyallup*, 2 Wn. App. 2d at 592.

"When a summary judgment motion involves factual issues, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Puyallup*, 2 Wn. App. 2d at 592. "If a moving defendant shows the absence of any evidence supporting the plaintiff's claim, the burden shifts to the plaintiff to show a genuine issue of material fact." *Puyallup*, 2 Wn. App. 2d at 592. "But when summary judgment presents only legal issues, we determine whether the moving party is entitled to judgment as a matter of law." *Puyallup*, 2 Wn. App. 2d at 592 (citing CR 56(c)).

B. PRA LEGAL PRINCIPLES

"The PRA is a strongly worded mandate for broad disclosure of public records." *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 714, 261 P.3d 119

---

[3] Although West appeals the order denying reconsideration, he fails to make any argument regarding this issue. RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we decline to decide this issue.

(2011). The PRA "stands for the proposition that, '*full access* to information concerning the conduct of government at every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.'" *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (quoting former RCW 42.17.010(11) (1975)).

RCW 42.56.010(3) defines a "public record" as consisting of three elements: (1) "any writing" (2) "containing information relating to the conduct of government or the performance of any governmental or proprietary function" (3) "prepared, owned, used, or retained by any state or local agency." *See Nissen*, 183 Wn.2d at 879. All three elements must be present for the record to constitute a public record. *See Nissen*, 183 Wn.2d at 879.

## C. FACEBOOK POSTS AS PUBLIC RECORDS

We recently held that "posts on social media sites like Facebook potentially can constitute public records, just like any other written communication." *Puyallup*, 2 Wn. App. 2d at 593. "The court in *Nissen* emphasized that the PRA must apply when public employees 'use cell phones to conduct public business by creating and exchanging public records—text messages, e-mails or anything else.'" *Puyallup*, 2 Wn. App. 2d at 593-94 (quoting *Nissen*, 183 Wn.2d at 884). We held that "[t]he same rule necessarily applies to public officials using Facebook to 'conduct public business.' Therefore, a Facebook post can constitute a public record—but only if the statutory requirements are satisfied." *Puyallup*, 2 Wn. App. 2d at 594.

We stated that "'agency employees are responsible for searching their files, devices, and accounts for records responsive to a relevant PRA request.'" *Puyallup*, 2 Wn. App. 2d at 594 (quoting *Nissen*, 183 Wn.2d at 886). "If an employee claims that information in a personal account is not public record, he or she must submit an affidavit or declaration stating facts sufficient to

support that claim." *Puyallup*, 2 Wn. App. 2d at 594. "These rules necessarily apply to a personal Facebook account when a PRA request has been made for information in such an account." *Puyallup*, 2 Wn. App. 2d at 594.

D. PUBLIC RECORDS ANALYSIS

1. Existence of a "Writing"

The first element of a public record under RCW 42.56.010(3) is the existence of a "writing." RCW 42.56.010(4) broadly defines "writing" to encompass "every . . . means of recording any form of communication." And RCW 42.56.010(3) states that definition of public record applies "regardless of physical form or characteristics" of the record.

Clark County does not dispute that the posts on Madore's personal Facebook page constitute a "writing" under the PRA, and thus, the first element is met.

2. Information Relating to Conduct of Government

The second element of a public record under RCW 42.56.010(3) is that the "writing" contains "information relating to the conduct of government or the performance of any governmental or proprietary function." "A record satisfies this element if it contains 'any information that refers to or impacts the actions, processes, and functions of government.'" *Puyallup*, 2 Wn. App. 2d at 595 (quoting *Nissen*, 183 Wn.2d at 880-81). "This element is established even if the information only indirectly relates to the conduct of government or to government functions." *Puyallup*, 2 Wn. App. 2d at 595. "Conversely, personal communications of government officials that are not work-related are not public records." *Puyallup*, 2 Wn. App. 2d at 595.

Again, Clark County does not dispute that the posts on Madore's Facebook page involved information relating to the conduct of government, and thus, the second element is met.

3. Records Prepared by a Government Agency

The third element of a public record under RCW 42.56.010(3) is that the writing be "prepared, owned, used, or retained by any state or local agency." A "local agency" includes a city and "any office, department, division, bureau, board, commission, or agency thereof." RCW 42.56.010(1).

West argues that Clark County, through Madore, must be deemed to have "prepared" the posts on Madore's personal Facebook page. We disagree.

a. Scope of Employment Requirements

"[A] record an agency employee prepares 'in the scope of employment' necessarily is a record prepared by the agency." *Puyallup*, 2 Wn. App. 2d at 596 (quoting *Nissen*, 183 Wn.2d at 876). The Supreme Court in *Nissen* equated "official capacity" and "scope of . . . employment" when referring to elected official. 183 Wn.2d at 882. The court emphasized that only records the employee prepares, owns, uses, or retains within the scope of employment qualify as public records. *Nissen*, 183 Wn.2d at 887. It stated, "It is worth repeating that records an employee maintains in a personal capacity will not qualify as public records, even if they refer to, comment on, or mention the employee's public duties." *Nissen*, 183 Wn.2d at 881, n.8.

b. Analysis

To determine whether Madore was acting within the scope of his employment or official capacity when he posted items on his personal Facebook page, we apply the three-part test outlined

8

in *Nissen*: (1) whether his position required the posts, (2) whether Clark County directed the posts, or (3) whether the posts furthered the County's interests. 183 Wn.2d at 878.

West argues that Madore's Facebook posts were made in his official capacity and furthered Clark County's interests. But Madore's Facebook posts were informative in nature. In the posts, Madore discussed his personal opinions on various issues regarding Clark County's governance and invited commentary. There is no evidence in the record that these posts in any way furthered Clark County's interests or that Madore was "conducting public business." *Puyallup*, 2 Wn. App. 2d at 599. The posts did not contain specific details regarding Clark County Council discussions, decisions, or other actions. If anything, as Clark County states, the posts furthered Madore's own interests by establishing his views on particular policies and inviting discussion among his constituents.

This case is analogous to *Puyallup*. In that case, the records at issue were on a Facebook page called "Friends of Julie Door." *Puyallup*, 2 Wn. App. 2d at 589. Door was an elected Puyallup City Council member. *Puyallup*, 2 Wn. App. 2d at 589. The "Friends of Julie Door" Facebook page did not contain any information related to the conduct of government function; it was not used or intended to be used to conduct any governmental function; it was publicly accessible, and it was a campaign site used for campaign purposes. *Puyallup*, 2 Wn. App. 2d at 589. The posts referenced various issues the City of Puyallup was facing. *Puyallup*, 2 Wn. App. 2d at 590.

We held that the posts were not public records because they did not meet the third element. *Puyallup*, 2 Wn. App. 2d at 599-600. We noted that there was no indication that Door, as a council member, was acting in her official capacity in preparing those posts or that she was conducting

9

public business. *Puyallup*, 2 Wn. App. 2d at 599. We stated that while "in a broad sense Door's informational posts may have furthered the [c]ity's interests to some minimal extent . . . this tangential benefit to the [c]ity [was] not sufficient to establish that Door was acting within the scope of employment or her official capacity in disseminating general information about the [c]ity." *Puyallup*, 2 Wn. App. 2d at 599.

Similarly here, Madore's posts on his personal Facebook page fail to meet the third element. Madore did not prepare the posts within the scope of his employment or official capacity as a Clark County Council member. In making the posts, Madore was not acting in his official capacity, conducting public business, or otherwise furthering Clark County's interests. Therefore, we hold that the posts on Madore's personal Facebook page are not public records under RCW 42.56.010(3).

## II. EXCLUSION OF EVIDENCE

West argues the screenshots were authenticated by him under ER 901, and the superior court should have taken judicial notice of them under ER 201, and thus, the superior court erred by not admitting them. We hold that the superior court did not err.

ER 201 allows for a court to take judicial notice of adjudicative facts. These include facts not in dispute that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b). West did not request the superior court take judicial notice in order to verify the accuracy of the contents of the posts, but rather, he sought to have them admitted in order to show they were in fact public records. Therefore, ER 201 does not apply to this issue.

10

ER 901 requires a preliminary prima facie showing by the proponent that the evidence "is what it purports to be." *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 86, 272 P.3d 865 (2012). It states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a).

ER 901 illustrates numerous methods by which it may be satisfied. *See* ER 901(b). These methods include "[t]estimony that a matter is what it is claimed to be." ER 901(b). That testimony must be based upon personal knowledge. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). We have held that screenshots of text messages can properly be admitted into evidence as long as they meet the requirements under ER 901. *See State v. Young*, 192 Wn. App. 850, 856-57, 369 P.3d 205 (2016).

West lacked personal knowledge that the screenshots he sought to admit were what they were purported to be. West did not have personal knowledge that the posts at issue were written by Madore rather than somebody else, and West's declaration does not properly authenticate these records. *See* ER 901. Because West failed to properly authenticate the records, we hold that the superior court did not err by denying admission of the evidence under ER 901.

### III. MOTION TO CONTINUE

West also argues that the superior court erred by denying his CR 56(f) motion to continue the hearing. We hold that the superior court did not err.

We review a superior court's ruling on a CR 56(f) motion for an abuse of discretion. *Bavand v. OneWest Bank, FSB*, 196 Wn. App. 813, 822, 385 P.3d 233 (2016). Under CR 56(f), a party requesting a continuance must support his request with an affidavit or declaration. The superior court may deny the motion for a continuance if: "' (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'" *Farmer v. Davis*, 161 Wn. App. 420, 430-31, 250 P.3d 138 (2011) (quoting *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

In support of his request for a continuance, West stated that it was "somewhat difficult to obtain certifications of these records as one would in an ordinary case." CP at 114. West failed to offer a good reason for a delay, and he offered no explanation for why he did not attempt to authenticate the records earlier through Facebook. He also failed to present an affidavit or declaration to support his motion as required by CR 56(f). And West failed to explain how the screenshots, if authenticated, would raise a genuine issue of material fact.

Because West did not meet the requirements for a continuance, we hold that the superior court did not err by denying his motion.

No. 52843-6-II

CONCLUSION

We affirm the superior court's order granting Clark County's motion for summary judgment and dismissal with prejudice, the court's evidentiary rulings, and the denial of a continuance.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

I concur:

LEE, C.J.

MAXA, J. (concurring) — I agree with the majority opinion. I write separately to highlight the absurdity of the Public Records Act (PRA) claim presented in this case.

David Madore's personal Facebook page is open to the public. Arthur West had full access to Madore's Facebook posts and in fact printed copies of those posts. Nevertheless, West submitted a PRA request to Clark County for copies of Madore's Facebook posts. He then filed a lawsuit against Clark County alleging a PRA violation when the county did not produce them. In the trial court, West submitted copies of the Facebook posts that he already possessed to show that Clark County should have provided those same posts. This situation borders on the absurd.

The current version of the PRA does not preclude West from submitting his PRA request. But I do not believe that the PRA was designed to impose penalties on a public agency for failing to produce records that are easily accessible and available to the public and that already have been obtained by the requestor. Making those types of requests forces public agencies to expend resources responding and litigating these types of cases wastes judicial resources.

The legislature may want to consider whether to amend the PRA to preclude requests similar to the one here.



MAXA, J.