**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBERT T. EKELMANN AS PERSONAL REPESENTATIVE FOR THE ESTATE OF VICKIE ARNESS, | No. 55767-3-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| CITY OF POULSBO, a Washington municipal corporation, | |
| Respondent. | |

MAXA, J. – Robert Ekelmann, as personal representative for the Estate of Vickie Arness, appeals the trial court's grant of partial summary judgment in favor of the City of Poulsbo and denial of his summary judgment motion regarding a request for documents under the Public Records Act (PRA), chapter 42.56 RCW. The trial court ruled that the City did not violate the PRA in redacting some of the requested documents under the exemptions for certain real estate transaction documents in RCW 42.56.260(1).

RCW 42.56.260(1) provides PRA exemptions for the following documents "relating to an agency's real estate transactions":

(a) Except as provided by chapter 8.26 RCW, the contents of real estate appraisals, made for or by any agency relative to the acquisition or sale of property;

(b) Documents prepared for the purpose of considering the selection of a site or the acquisition of real estate by lease or purchase when public knowledge regarding such consideration would cause a likelihood of increased price.

No. 55767-3-II

Ekelmann's attorney sent the City a PRA request asking for all settlement and/or purchase and sale agreements and all purchase offers for properties the City needed to acquire related to a public works road improvement project. The City produced documents in response to the PRA request, but redacted all appraisal documents related to the properties pursuant to RCW 42.56.260(1)(a) and redacted the sale prices and information indicating the sale prices of the properties pursuant to RCW 42.56.260(1)(b).

We hold that (1) the RCW 42.56.260(1)(a) exemption applies despite the exception relating to chapter 8.26 RCW because nothing in that chapter states that the general public is entitled to appraisal documents for properties impacted by a public works project, and (2) the RCW 42.56.260(1)(b) exemption applies because documents and information related to the sale price of properties necessarily are documents prepared for the purpose of considering the acquisition of property.

Accordingly, we affirm the trial court's order granting partial summary judgment in favor of the City and denying Ekelmann's summary judgment motion.

FACTS

*Background*

The public works road improvement project known as the Noll Road Project will connect State Route (SR) 305 to Lincoln Road via Noll Road, Languanet Lane, and Maranatha Lane in Poulsbo. The project will be constructed in three stages. Completing each stage will require the City to acquire real property parcels and/or easements of private real property. The first stage involved 16 parcels, including the Arness property.

The City received both state and federal transportation funding for the Noll Road Project. Because the project uses federal funds, all right of way activities must be completed in

2

No. 55767-3-II

accordance with the City's right of way acquisition policies and procedures as approved by the Washington State Department of Transportation (WSDOT), WSDOT's local agency guidelines, and the federal Uniform Relocation Assistance and Real Property Acquisitions Policies Act of 1970, 42 U.S.C. §§ 4601-4655.[1]  In addition, the Relocation Assistance – Real Property Acquisition Policy Act (Relocation Act), chapter 8.26 RCW, outlines the procedures that local public agencies must follow regarding compensation for the acquisition of real property for a public works program.

Under these statutes and regulations, the fair market value of the real property must be assessed before a purchase offer is approved and made to any private property owner.  The fair market values of each parcel for the Noll Road Project were appraised through the use of pre-approved certified real estate appraisers who prepare administrative offer summary (AOS) worksheets, narrative appraisal reports, and/or appraisal review reports.  These documents were used as the basis of the purchase offers that were recommended to and ultimately approved by the City before purchase offer packages are presented to private property owners.

In July 2015, the City contracted with Parametrix, Inc. as the design engineer consultant to manage the Noll Road Project.  Parametrix subcontracted with Universal Field Services, Inc. (UFS).  UFS hired the appraisers for the Noll Road Project, managed the appraisal process, generated offers for the property owners, and engaged in negotiations for final acquisition of the parcels.  UFS was required to present the completed AOS worksheets, narrative appraisal reports, and appraisal review reports to city council in executive session for review or rejection of the proposed just compensation to be offered to the property owners.  The City had final

---

[1] Because the 2016 supplemental scope of work states that the Noll Road Project will not displace any residential occupants, business occupants or personal property, the relocation assistance services governed by WSDOT and federal guidelines are not required.

No. 55767-3-II

approval for all offer letters, the amounts of just compensation for each parcel, and proposed acquisition documents before any offers were extended.

After written approval from the City, UFS prepared an offer package to purchase all the required real property interests and negotiated in good faith to reach a settlement with each property owner. The purchase offers consisted of an offer letter that stated the price the City was willing to pay to acquire the property, any counteroffers, real estate appraisal documents, other property valuation reports, and other proposed acquisition documents necessary to finalize the sale of real property.

*The Arness Property and PRA request*

In March 2018, UFS sent Ekelmann an offer package that included a copy of the appraisal report to purchase a portion of the Arness property. The offer letter stated that the City was willing to pay $0 based on the market value estimated for the Arness property. Shortly after receiving the offer package, Ekelmann hired attorney Ron Templeton to represent him during negotiations with UFS.

In April 2019, Templeton submitted a PRA request to the City asking for documents related to:

> [1]Any and all settlement and or purchase and sale agreements between the City and owners of property arising from or related to the City's proposed Noll Road Improvement Project for the period November 2017 through April 2019 and [2] all purchase offers made by the city before the City acquired such property or reached an agreement for the purchase of any such property by the City. This request includes property the City has or intends to acquire for proposed improvements to SR305, Lincoln Road, Languanet Lane and Johnson Road. This request includes both easements and fee title to any and all such property.

Clerk's Papers at 557. Templeton did not state in his PRA request that he was seeking records on behalf of Ekelmann or the Arness Estate, and he did not mention his connection to the Arness property.

No. 55767-3-II

As the City worked on responding to Templeton's PRA request, the City sent Ekelmann a new offer package for $165,000. Ekelmann did not respond to the City's offer as he waited for Templeton's PRA request to be completed.

In July, the City produced 2,685 documents with significant redactions in response to Templeton's PRA request. The City provided a redaction log explaining the statutory justification for the redacted records. Relevant here, the City redacted all documents related to appraisals pursuant to RCW 42.56.260(1)(a) and the sale prices and information indicating the sale prices of real estate pursuant to RCW 42.56.260(1)(b). At that time, the City was still in the process of purchasing all necessary properties for the Noll Road Project.

After Templeton's PRA request had been completed, Ekelmann accepted the City's offer to purchase a portion of the Arness Property for $165,000.

*Procedural History*

In June 2020, Ekelmann filed a lawsuit against the City, arguing in part that the City improperly redacted and withheld public records that were not exempt from disclosure in violation of the PRA.[2]

Ekelmann moved for partial summary judgment, stating that there were no disputed material facts that the City had wrongfully redacted and withheld public documents under RCW 42.56.260(1)(a)-(b) as a matter of law. Specifically, Ekelmann argued that (1) the PRA exemption under RCW 42.56.260(1)(a) was not applicable when the appraisal documents at issue were prepared in accordance with chapter 8.26 RCW, and (2) the PRA exemption under

---

[2] Ekelmann asserted other PRA-related claims, and he stated in his notice of appeal that he was challenging the trial court's order granting summary judgment on his remaining claims. But Ekelmann acknowledges that he has abandoned the appeal of the dismissal of those claims.

5

No. 55767-3-II

RCW 42.56.260(1)(b) was not applicable when the City already had identified which parcels they needed to acquire to complete the Noll Road Project.

The trial court granted summary judgment in favor of the City. The court ruled that the City (1) had not improperly withheld any public records, (2) properly withheld the contents of appraisals from public disclosure pursuant to the exemption in RCW 42.56.260(1)(a), and (3) properly withheld or redacted documents made for the purposes of acquiring real estate from public disclosure pursuant to the exemption in RCW 42.56.260(1)(b). The court also struck several sentences in Templeton's declaration as hearsay.

Ekelmann appeals the trial court's order granting partial summary judgment in favor of the City and the court's denial of his summary judgment motion.

ANALYSIS

A. STANDARD OF REVIEW

We review de novo an agency's action in responding to a PRA request. RCW 42.56.550(3). Our de novo review includes summary judgment orders involving the PRA. *West v. City of Puyallup*, 2 Wn. App. 2d 586, 591, 410 P.3d 1197 (2018). And we stand in the same position as the trial court on PRA matters when the record consists of only documentary evidence. *Id.* at 592.

When a summary judgment motion involves factual issues, we view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* Once a moving defendant demonstrates that no evidence supports the plaintiff's claim, the burden shifts to the plaintiff to show a genuine issue of material fact. *Id.* But when summary judgment presents only legal issues, we determine whether the moving party is entitled to judgment as a matter of law. CR 56(c).

6

No. 55767-3-II

B.      PRA LEGAL PRINCIPLES

The PRA presents a mandate for the broad disclosure of public records.  *Green v. Pierce County*, 197 Wn.2d 841, 850, 487 P.3d 499 (2021), *cert. denied,* 142 S. Ct. 1399 (2022).  RCW 42.56.030 expressly requires that the PRA be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected."  Accordingly, an agency has an affirmative duty to disclose public records upon request unless disclosure is specifically exempt.  RCW 42.56.070(1); *Green*, 197 Wn.2d at 850.  The burden of proof is on the agency to prove that the law supports any refusal to produce requested records.  RCW 42.56.550(1); *Green*, 197 Wn.2d at 851.

As noted above, under RCW 42.56.260(1) certain documents "relating to an agency's real estate transactions" are exempt from the PRA:

> (a) Except as provided by chapter 8.26 RCW, the contents of real estate appraisals, made for or by any agency relative to the acquisition or sale of property;

> (b) Documents prepared for the purpose of considering the selection of a site or the acquisition of real estate by lease or purchase when public knowledge regarding such consideration would cause a likelihood of increased price, including records prepared for executive session pursuant to RCW 42.30.110(1)(b).

The PRA exemptions provided under RCW 42.56.260(1) do not apply "when disclosure is mandated by another statute . . . or all properties that are part of the project have been purchased, sold, or leased."  RCW 42.56.260(2).  In addition, "[n]o appraisal may be withheld for more than three years." RCW 42.56.260(2).

C.      REAL ESTATE TRANSACTION EXEMPTIONS

Ekelmann argues that the PRA exemptions provided in RCW 42.56.260(1)(a) and (b) do not apply to appraisal documents generated in accordance with chapter 8.26 RCW and property sale documents for properties that the City already had decided to acquire.  We disagree.

7

No. 55767-3-II

1.      Statutory Interpretation

Statutory interpretation is a matter of law that we review de novo. *Green*, 197 Wn.2d at 849. The primary goal in interpreting a statute is to determine and give effect to the legislature's intent. *Id* at 849-50. We consider the language of the statute, the context of the statute, related statutes, and the statutory scheme as a whole. *Randy Reynolds & Assocs. v. Harmon*, 193 Wn.2d 143, 155, 437 P.3d 677 (2019). "[A]n enacted statement of legislative purpose is included in a plain reading of a statute." *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 310, 237 P.3d 256 (2010). The interpretation ends if the plain language is unambiguous. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014).

We do not "rewrite plain statutory language under the guise of construction." *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018). "We give effect to all the language in the statute and do not render any portion meaningless or superfluous." *TST, LLC v. Mfd. Hous. Disp. Resol. Program of Off. of Att'y Gen.*, 17 Wn. App. 2d 662, 668, 485 P.3d 977 (2021). We give undefined statutory language its usual and ordinary meaning and interpret words in the context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395-96, 325 P.3d 904 (2014).

2.      Relocation Act

The Relocation Act, chapter 8.26 RCW, outlines the procedures that the state or local public agencies must follow regarding compensation for the acquisition of real property for a public works program. *See B & W Constr., Inc. v. City of Lacey*, 19 Wn. App. 220, 228-29, 577 P.2d 583 (1978). The legislature codified the several purposes of the Relocation Act, including:

> (a) To establish a uniform policy for the fair and equitable treatment of persons displaced as a direct result of public works programs of the state and local governments in order that such persons shall not suffer disproportionate injuries as

8

No. 55767-3-II

> a result of programs designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons;
>
> (b) To encourage and expedite the acquisition of real property for public works programs by agreements with owners, to reduce litigation and relieve congestion in the courts, to assure consistent treatment for owners affected by state and local programs, and to promote public confidence in state and local land acquisition practices.

RCW 8.26.010(1)(a), (b).

Under RCW 8.26.180(2), "[r]eal property shall be appraised before the initiation of negotiations" between the acquiring agency and the real property owner. Before the start of negotiations, "the acquiring agency shall establish an amount which it believes to be just compensation . . . [and] provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation." RCW 8.26.180(3). RCW 8.26.020(13) defines "appraisal" as "a written statement independently and impartially prepared by a qualified appraiser setting forth an opinion of defined value of an adequately described property as of a specific date, supported by the presentation and analysis of relevant market information."

> 3.   RCW 42.56.260(1)(a)

RCW 42.56.260(1)(a) states that an agency may redact information related to real estate appraisals for the acquisition or sale of property "*[e]xcept as provided by chapter 8.26 RCW*." (Emphasis added.) Therefore, we must decide what exception to the RCW 42.56.260(1)(a) PRA exemption the Relocation Act "provides." In other words, we must look at chapter 8.26 RCW to determine under what circumstances a public agency must disclose real estate appraisal information to the requesting party. RCW 42.56.260(2), which states that the PRA exemptions under RCW 42.56.260(1) do not apply when another statute mandates disclosure, supports this conclusion.

9

No. 55767-3-II

The only provision in the Relocation Act that addresses providing information regarding property acquisition is RCW 8.26.180(3). That subsection states that *the owners of the real property to be acquired* will be given a written statement that provides an explanation for how the acquiring agency reached the proposed monetary value of *their real property*. RCW 8.26.180(3) clearly indicates that only the owners of the real property to be acquired have the right to obtain appraisal information, and only regarding their property.

RCW 8.26.180(3) provides an exception to the RCW 42.56.260(1)(a) PRA exemption for owners of property being appraised. Except for the reference to chapter 8.26 RCW in RCW 42.56.260(1)(a), appraisal information could be withheld even from such owners.

However, no other section of the Relocation Act can be interpreted as providing an exception to the RCW 42.56.260(1)(a) PRA exemption. Specifically, nothing in the Relocation Act mandates disclosure to the general public of appraisal information for properties to be acquired for a public works project. The plain language of RCW 42.56.260(1)(a) and the Relocation Act compels the conclusion that appraisal information is exempt from disclosure under the PRA except for a request from the owner of the property being appraised.

Limiting disclosure of appraisal information to the owner of the real property to be acquired supports the Relocation Act's primary purpose to provide just compensation in a uniform manner to property owners who face displacement as a result of a public works project. *See* RCW 8.26.010(1)(a)-(b); *Union Elevator & Warehouse Co. v. Dep't of Transp.*, 171 Wn.2d 54, 67, 248 P.3d 83 (2011) ("[T]he language of RCW 8.26.010(1)(a) contemplates that relocation assistance awards will be uniformly applied."). If the property owner has access to appraisal information about his or her own property only, then all property owners in the same multi-phase public works project will have equal footing during their respective negotiation process.

10

No. 55767-3-II

Ekelmann makes three primary arguments to support his position. First, he argues that RCW 42.56.210(1)(a) does not apply to any real estate appraisals generated for the acquisition of property under the Relocation Act. However, this argument is inconsistent with the plain language of RCW 42.56.260(1)(a). The phrase used in the statute is "[e]xcept *as provided by* chapter 8.26 RCW," not "except *for property acquired under* chapter 8.26 RCW." We cannot rewrite the plain language of RCW 42.56.260(1)(a). *See McColl*, 6 Wn. App. 2d at 91.

Second, Ekelmann argues that exempting all appraisal records generated under the Relocation Act from RCW 42.56.260(1)(a)'s application is inconsistent with the purpose of the Relocation Act to promote public confidence in the property acquisition process as provided in RCW 8.26.010(1)(b). However, Ekelmann focuses on only one of the multiple purposes of the Relocation Act as provided in RCW 8.26.010(1). He ignores the references to ensuring that the *owners* of real property to be acquired are receiving fair and equitable treatment or that the acquisition procedure should be completed in an expeditious manner. Further, allowing anyone besides the owner to have access to a property's appraisal information could undermine the Relocation Act's goal to complete the acquisition process in a uniform and expeditious manner when a public works projects has multiple phases that require acquiring different property at different times. *See* RCW 8.26.010(1)(a)-(b).

Third, Ekelmann relies on RCW 8.26.180(3) to argue that the Relocation Act prohibits redacting appraisal information that supports the basis of an offer for the purchase of a property *from all requesting parties*. He also argues that nothing in RCW 8.26.180(3) prohibits disclosing appraisal information to the general public. However, as discussed above, the plain language of RCW 8.26.180(3) states that the "acquiring agency shall provide *the owner* of real property to be acquired" with an explanation of how it reached the purchase offer and why it considers it to be

11

No. 55767-3-II

just compensation. RCW 8.26.180(3) does not state or even suggest that members of the general public are entitled to receive appraisal information.

Under the plain language of RCW 42.56.260(1)(a) and RCW 8.26.180(3), only the owner of the property being appraised is entitled to obtain the appraisal for that property until all relevant properties are purchased or a maximum of three years has passed. Here, there is no dispute that the PRA requestor, Templeton, was not the owner of any property involved in the Noll Road Project. Therefore, the City lawfully redacted the appraisal documents under RCW 42.56.260(1)(a). And even if it was clear that Templeton had explained that he was representing Ekelmann or the Arness property, he still would have been entitled to appraisal information for the Arness property only.

We hold that the trial court did not err in granting summary judgment in favor of the City regarding the documents redacted under RCW 42.56.260(1)(a).

4.  RCW 42.56.260(1)(b)

RCW 42.56.260(1)(b) exempts from the PRA "[d]ocuments prepared for the purpose of *considering* the selection of a site or the *acquisition of real estate by lease or purchase* when public knowledge regarding such *consideration* would cause a likelihood of increased price." (Emphasis added.) Based on the terms "considering" and "consideration," Ekelmann argues that RCW 42.56.260(1)(b) is inapplicable to the redacted sale price information because the City already had identified which properties it needed to acquire for the Noll Road Project before the real estate acquisition documents were prepared. As a result, the City was no longer considering what sites it would acquire when purchase offers were made and when properties were sold.[3]

---

[3] Ekelmann does not address the requirement that public knowledge of such documents must lead to a likelihood of increased lease or purchase price.

12

Ekelmann's argument may be correct with regard to documents relating to the City's determination of what properties it needed to acquire for the Noll Road Project. Years earlier the City had completed its consideration of the "selection of a site." RCW 42.56.260(1)(b). But the City did not redact those documents. It redacted documents that indicated the sale price of properties within the selected site. Therefore, this court must decide whether sale price information involves "[d]ocuments prepared for the purpose of considering . . . the acquisition of real estate by . . . purchase." RCW 42.56.260(1)(b).[4]

Ekelmann suggests that RCW 42.56.260(1)(b) applies only to documents relating to an agency's decision whether to acquire a property, not to documents relating to the actual acquisition of that property. But this interpretation reads the term "considering" too narrowly. When an agency makes a purchase offer for property, it is still "considering" the acquisition because the parties have not yet agreed on a purchase price. And even after a purchase price has been determined, an agency still is "considering" the acquisition because the final real estate documents have not yet been executed. Therefore, RCW 42.56.260(1)(b) necessarily encompasses *the entire acquisition process* that culminates in the final purchase of the property.

In addition, Ekelmann's interpretation essentially would render the phrase "acquisition of real estate by lease or purchase" in RCW 42.56.260(1)(b) superfluous. RCW 42.56.260(1)(b) expressly distinguishes between the selection of the site and the acquisition of real estate. But under Ekelmann's interpretation, the "acquisition of real estate" clause would protect only the

---

[4] It could be argued that the word "considering" in RCW 42.56.260(1)(b) only applies to the "selection of a site" and not to the "acquisition of real estate." The statute actually makes more sense when interpreted this way. But the later reference to "such consideration" seems inconsistent with this interpretation. And the City does not make this argument.

13

No. 55767-3-II

same documents protected under the "selection of the site" clause because selecting a site necessarily includes the decision to acquire the property at issue.

Applying RCW 42.56.260(1)(b) to documents indicating the sale price of properties within a larger project is also consistent with the clear purpose of that exemption. The second portion of RCW 42.56.260(1)(b) states that the exemption applies "when public knowledge regarding such consideration would cause a likelihood of increased price." It is easy to understand how the sales prices of properties within the project could be used by other property owners in their negotiations with an agency to increase the sale price of their properties.

Ekelmann disputes that RCW 42.56.260(1)(b) stands for the proposition that the redaction of documents prepared for the acquisition of a property was necessary to protect the City's ability to negotiate the lowest possible purchase price. But he does not explain why the production of those documents would not affect the purchase price.

We hold that the trial court did not err in granting summary judgment in favor of the City regarding the documents redacted under RCW 42.56.260(1)(b).

5.    Application of RCW 42.56.260(1) to Eminent Domain Acquisitions

Ekelmann argues that both of the RCW 42.56.260(1)(a) and (b) PRA exemptions apply only when an agency is purchasing property on the open market for a public facility, not when an agency is acquiring property through eminent domain and under the Relocation Act. However, Ekelmann provides no legal authority or any legislative history to support his argument. And nothing in the language of RCW 42.56.260(1) suggests that the exemptions apply only to certain types of property acquisitions and not to others. Instead, RCW 42.56.260(1) states that the exemptions apply broadly to "an agency's real estate transactions." Therefore, we reject this argument.

14

No. 55767-3-II

D.    ATTORNEY FEES

Ekelmann argues that he should be awarded reasonable attorney fees and costs under RAP 18.1 and RCW 42.56.550(4).  But attorney fees can be awarded under RCW 42.56.550(4) only to the prevailing party, and Ekelmann is not the prevailing party on appeal.  Therefore, we decline Ekelmann's request for attorney fees on appeal.

CONCLUSION

We affirm the trial court's order granting partial summary judgment in favor of the City and the trial court's denial of Ekelmann's summary judgment motion.

_____
MAXA, J.


We concur:

_____
GLASGOW, C.J.


_____
CRUSER, J.